## GENERAL BAKING CO. v. GROCERS' BAKING CO.

### No. 701.

District Court, W. D. Kentucky.

Feb. 8, 1933.

·Crawford, Middleton, Milner & Seelbach, of Louisville, Ky., and F. P. Warfield and T. R. V. Fike, both of New York City, for plaintiff.

Garnett & Van Winkle and W. W. Wyatt, all of Louisville, Ky., and Howard S. Neiman, of New York City, for defendant.

DAWSON, District Judge.

This is a suit for alleged infringement of trade-mark and for unfair competition, the plaintiff being a citizen of the state of New York and the defendant a citizen and resident of the Western District of Kentucky. The cause is before me on motion for a temporary injunction.

Both the plaintiff and defendant for many years have been engaged in the baking and marketing of bread. The plaintiff has many plants located in nineteen different states, including one at Louisville, Ky., while the defendant has a plant at Louisville, Ky., one at Lexington, Ky., and owns or controls plants at Johnson City, Tenn., New Albany, Ind., and Bedford, Ind.

Prior to May, 1931, the plaintiff for many years had sold a bread which it called "Bond Bread," which name, together with certain distinctive and identifying insignia, was at an early date in its business adopted by the plaintiff as its trade-mark. For many years prior to May, 1931, plaintiff had been wrapping its bread in a white oil paper which had impressed upon it representations of a bond with the words "Bond Bread" and other words printed within the borders of these representations, and around the edge of the paper smaller representations of a bond, with the word "Bond" printed thereon.

During a considerable portion of this same time the defendant was advertising and marketing a bread known as "Honey-Krust." In 1921 the defendant commenced the marketing of its Honey-Krust bread in oil paper, with the trade name "Honey-Krust" printed in large letters on the wrapper, and also certain other insignia not necessary here to mention. From time to time there were some changes made in the oil wrapper, but always in connection with its trade name of "Honey-Krust." In 1928 the defendant adopted an oil wrapper which, in addition to the words "Honey-Krust," had on it a rather large French oval, with the words "Honey-Krust" in large letters running through the middle of the oval and a border of small French ovals. The bread marketed under this wrapper had honey as one of its ingredients. The defendant, during this period of time, was advertising and marketing not only a bread claimed to contain honey, but also one which had no such ingredient in it, and in February, 1930, it adopted as a design for the wrapper in which its bread not containing honey was marketed an oil paper with a Z-shaped blue ribbon running through the center of the wrapper, with a large gold seal between each angle of the ribbon with the words "Gold Seal" across the face thereof, and with a border composed of a narrow zigzag blue ribbon, with a small gold seal at each point of the ribbon with the words "Gold Seal Bread" and "Made by Honey-Krust Bakers" alternating on these small gold seals.

In February, 1931, the plaintiff, by contract with National Foods, Limited, the licensee of Wisconsin Alumni Research Foundation, secured the exclusive right to incorporate in bread and breadstuffs throughout the United States vitamin D obtained under Steembock patent, No. 1,680,818, owned by said Wisconsin Alumni Research Foundation, and the first bread containing this element was produced and marketed from its Boston, Mass., plant on March 16, 1931, and from then until October 12, 1931, plaintiff was engaged in making, advertising, and selling such bread from various other plants owned by it. On May 9, 1931, plaintiff adopted as the wrapper for this bread an oil paper with the same insignia thereon as it had theretofore used in marketing its Bond bread, with the addition of the representation of a large sun, having a yellow center, with a grayish band surrounding the yellow center and staggered red rays radiating therefrom, the yellow center bearing the words, "This bread brings you the extra Sunshine Vitamin D you need," and printed on the band surrounding the yellow center the words, "Licensed by the Wisconsin Alumni Research Foundation under Steembock Patent No. 1,680,818." The wrapper also had a representation of small suns, with yellow centers and staggered red rays radiating therefrom, between each of the small representations of bonds appearing on the border of the wrapper. The plaintiff, from the time it commenced to market its vitamin D

Bond bread, conducted an extensive and expensive campaign, advertising its product under the name of "Sunshine Vitamin D Bond Bread," the first advertising in Louisville appearing on October 5, 1931. The bread was first put out in Louisville from its Louisville plant on October 12, 1931.

On August 25, 1931, the defendant entered into an agreement with National Oil Products Company, licensee of University Patents, Inc., the owner of Theodore F. Zucker Patent No. 1,678,454, by which it was given the right to incorporate in bread made, sold, and distributed from its Louisville, Ky., Johnson City, Tenn., New Albany, Ind., Bedford, Ind., and Lexington, Ky., plants vitamin D obtained under said Zucker patent. University Patents, Inc., is owned and controlled by Columbia University. It is apparent from the record that since the latter part of 1929 the defendant had been investigating the feasibility of incorporating vitamin D in the bread made and marketed by it. On October 6, 1931, it placed upon the market, bread produced by it at its Louisville, Ky., plant as a licensee under the Zucker patent. This bread was marketed in a wrapper which was a combination of its Honey Krust wrapper and the Gold Seal wrapper heretofore referred to, with certain additions thereto. This wrapper retained the zigzag blue ribbon effect used on its Gold Seal wrapper and the French ovals used on the Honey Krust wrapper. The large French ovals had a center of red with a narrow border of white merging into a wider border of blue, with the words "Vitamin D" printed in white, with blue shading appearing near the top of the red center, and the word "Loaf" similarly printed near the bottom, and between the two the words "Honey Krust" printed in blue, with white shading. Alternating on the border of the paper were a small circle and a small French oval, each having a yellow center and red circumference, the circles having printed therein the words "Vitamin D" and the French ovals the words "Honey Krust." The wrapper also contained the representation of a large sun with a yellow center and red circumference, with broad yellow rays radiating therefrom, and within these yellow rays narrow staggered red rays. The center of the suns appearing to the left of the blue ribbon in the middle of the wrapper contained these words, "The Vitamin D contained herein was produced under U. S. Patent Number 1,678,-454, developed in the laboratories of and controlled by Columbia University." The large suns to the right of the blue ribbon contained in the center these words, "Contains the Sun-shine Vitamin 'D.' " Defendant engaged in a more or less extensive advertisement of its vitamin D bread, advertising it as "Vitamin D Honey-Krust Loaf," and as bread containing the "Sunshine Vitamin D."

A careful consideration of all the evidence in this case, and indulging the presumption that the court knows what is common knowledge, leads me to the conclusion that the plaintiff is not entitled to appropriate as its exclusive property in the marketing and advertising of bread the words "Sunshine Vitamin D." It is generally known and understood that vitamin D has the same effect upon animal life, including human beings, as the ultraviolet rays of the sun. Such has been the understanding from the writings of scientists almost from the date of the discovery of this vitamin, and the evidence in this case I think abundantly establishes this fact. I think the record in this case justifies the conclusion that the terms "Sunshine Vitamin," "Vitamin D," and "Sunshine Vitamin D" are interchangeable terms, commonly used to designate vitamin D. Such being the case, the words "Sunshine Vitamin D" are not capable of being appropriated by any one as a trade-mark in connection with his product, any more than the words "Vitamin D" are capable of being so appropriated. I do not think the plaintiff could successfully maintain that by advertising its product as vitamin D Bond bread, it could prevent the defendant from advertising its product as vitamin D Honey-Krust loaf. In each instance, assuming that each of the products contained vitamin D, the use of the words "Vitamin D" in connection with the trade name of its bread would be merely descriptive of the bread. It would merely indicate that the bread contained vitamin D. Similarly, the advertisement of plaintiff's product as "Sunshine Vitamin D Bond Bread" merely indicates that the Bond bread put out by it contains vitamin D. As it is apparent that the plaintiff cannot appropriate unto itself the exclusive right to market bread containing vitamin D, I think it necessarily follows that it cannot appropriate unto itself the exclusive right to advertise its bread as containing that element.

Neither do I think the proof in this case sustains plaintiff's contention that the words "Sunshine Vitamin D" have acquired any such secondary meaning as that it can be said, when used in connection with bread, that the public understands that they refer to and mean plaintiff's bread. As I understand the law, in order for words not otherwise capable of being appropriated as a trade-mark to ac-

quire a secondary meaning to the extent that the claimant is entitled to protection in their use, they must be so associated in the mind of the ordinary buying public with the claimant's product as that they mean to such buying public the claimant's product, and no other. I think the proof in this case falls far short of meeting this test.

It only remains to determine if defendant has been guilty of unfair trade competition in the wrapper used by it to market its vitamin D Honey-Krust bread and in its advertising of this product. In this connection I think it must be conceded that the plaintiff cannot claim an exclusive right to the use of a representation of the sun on its wrappers and in its other advertising. It can only complain if the defendant has intentionally used wrappers and advertising so similar to plaintiff's wrappers and advertising as to mislead the ordinary and casual buying public into buying the defendant's product in the belief that the plaintiff's product is being purchased. In an unfair competition case the intent of the defendant to mislead is a necessary element, although, of course, where the imitation by the defendant is so slavish that the inevitable consequence is deception, the intent will be presumed. So far as the wrappers are concerned, I recognize the rule that the similarity is not to be determined by placing the wrappers side by side and comparing the two. I think the test to be applied is whether the defendant's wrapper, when seen and casually examined by the ordinary purchaser, is sufficiently like the mental picture and recollection such a purchaser would have of the plaintiff's wrapper as to mislead him into the belief that he is purchasing plaintiff's goods. This question, in my judgment, must be answered against the plaintiff. It seems to me that the two wrappers have no real similarity whatever, except the representations of the sun on each, and there is very little similarity even in these representations. The predominant features of the plaintiff's wrapper are the representations of a bond and the words "Bond Bread," while the predominant features of the defendant's wrapper are the blue ribbon and the large French oval, and the words "Honey-Krust." The color of the paper used in the plaintiff's wrapper is white, while the large yellow rays on the defendant's wrapper give to it a general yellowish cast. It seems to me that a person familiar with the plaintiff's wrapper would have impressed upon his mind that it was white paper covered with numerous representations of a bond and with the words "Bond Bread" appearing in numerous places thereon, none of which appear on the defendant's wrapper. I cannot see how it can be said that even the most casual purchaser of defendant's bread, inclosed in its wrapper, would be misled by the wrapper into the belief that he is purchasing plaintiff's bread.

Much is made of the similarity of defendant's advertising to that used by the plaintiff; but when it is borne in mind that each of the parties was intent upon advertising its bread as containing the recently discovered element vitamin D, there remains very little support for plaintiff's contention that the similarity grew out of defendant's desire to reap the benefit of plaintiff's advertising. The words used by each are what one would naturally expect to find in the advertisement of a merchant proclaiming that his product contains this element so vital to the physical well-being of man.

Plaintiff's contention that the use by the defendant of the radio, newspapers, and letters to advertise its product is evidence of defendant's general plan to copy its method of advertising, deserves but little consideration. In using these mediums of building up a market for its product, defendant was following a general practice of the advertising world, upon which the plaintiff certainly can claim no monopoly.

For the reasons stated, the temporary injunction must be denied.