MILAN THIERFELD and Others, Plaintiffs, *v.* EDWARD CERRETA, Defendant.

Supreme Court, Special Term, New York County, June 11, 1940.

*Louis Barnett* [*Albert T. Scharpo* of counsel], for the plaintiffs.
*Milton M. Mound,* for the defendant.

BERNSTEIN, J.  The plaintiffs, manufacturers of ladies' handbags, seek by this action to restrain the defendant, a competitor, from using the words " Corday," " Corde," " Cordé " and " Kor Day " as a mark or designation of his product, and to account to them for such profits as the defendant may have heretofore derived from the sale of his product so marked.  The relief applied for is based on the claim that in 1931 the plaintiffs adopted the word " Corday " as a distinguishing mark for their handbags; that in 1934 they changed the spelling of the word to " Corde " and " Cordé " (both pronounced " Cord-Day "), which they have used continuously ever since; that their handbags became widely known to the trade under those names, and that early in 1938 the defendant, who had been in the employ of the plaintiffs during some portions of 1936 and 1937, embarked in business on his own account and labeled his handbags " Kor Day " (bearing a representation of Mercury, the Roman god of commerce, in the space between " Kor " and " Day ").  The suit is thus one founded on both infringement of trade-mark rights and on unfair competition.

The defendant meets the issue by proof that the word " Cordé " is a French word of common use to describe a corded or twisted fabric; that it has been applied by the American handbag industry generally to denote corded embroidery and cord-embroidered handbags produced by the Bonnaz sewing machine ever since they were first introduced here from France in 1926, and that, being merely descriptive of the product, it is, therefore, not subject to exclusive appropriation as a trade-mark.  In support of his contention the defendant points to the fact that the Commissioner of Patents, in 1936, rejected the plaintiffs' application to register the word " Corde " as a trade-mark under the act of February 20, 1905 (U. S. Code, tit. 15, § 85), upon the ground that it was descriptive of a corded fabric bag, and that such word was subsequently registered by said plaintiffs under the act of March 19, 1920 (U. S. Code, tit. 15, § 121, ¶ [b]), allowing the registration of descriptive marks which may not be registered under the earlier act.

The plaintiffs counter with the contention that, even if the word be held to be merely descriptive, it has attained the dignity of a secondary meaning, for their product within the definition of the cases which entitled it to protection as a trade-mark.

The rejection of registration under the act of 1905 is, of course, not decisive upon this court as to whether " Corde " is a trade-mark or a word of description.  On the other hand, the registration of the word under the act of 1920 was without effect as a source of title or even as *prima facie* evidence thereof.  (*Neva-Wet Corp.* v. *Never Wet Processing Corp.*, 277 N. Y. 163, 171.)  The plaintiffs' claim

must consequently rest here upon their common-law rights as though there had been no registration at all. (*Sleight Metallic Ink Co.* v. *Marks*, 52 F. [2d] 664, 665.)

The evidence tendered upon the trial is persuasive of the fact that the word " Cordé," in its original French spelling, the word " Corde," in its Anglicized spelling, and the word " Corday," in its phonetic spelling, as used in connection with handbags, are purely descriptive of cord-embroidered bags and generally so understood in the trade. It is virtually so conceded by the plaintiff De Martino in her examination before trial. Nor did the word lose the quality of descriptiveness by the variation of spelling or by its translation into a foreign language word. (*Roncoroni* v. *Gross*, 92 App. Div. 221.) Unless, therefore, it has by use acquired a secondary meaning, it is not subject to exclusive appropriation. (*Corbin* v. *Gould*, 133 U. S. 308; *Neva-Wet Process Corp.* v. *Never Wet Processing Corp.*, *supra*, 178; *Caswell* v. *Davis*, 58 N. Y. 223.)

As the Court of Appeals stated it in the last cited case: " It is the result of all the decisions, that known words and phrases indicative of quality and composition are the common property of all mankind. They may not be appropriated by one to mark an article of his manufacture when they may be used truthfully by another to inform the public of the ingredients which make up an article made by him. Even when the sole purpose of the one who first uses them is to form of them a trade-mark for himself, expressive only of origin with himself, if they do in fact show forth the quality and composition of the article sold by him, he may not be protected in the exclusive use of them. * * * Words are but symbols. When they are used to signify a fact, or when, with what purpose soever used, they do signify a fact which others may, by the use of them, express with equal truth, others have an equal right to them for that purpose."

It has long been established that words which are descriptive of a product may by long and wide usage come to be known to the public as denoting the product of a particular trader. (*Armstrong Paint & Varnish Works* v. *Nu-Enamel Corp.*, 305 U. S. 315; *Smith Co.* v. *American Pharmaceutical Co.*, 270 N. Y. 184.) The evidence here discloses, however, that the plaintiffs' volume of business was small, that their advertising was meagre and that they were barely known to the trade. Those are circumstances that warrant a finding that the use of the words by the plaintiffs had not come to be identified with their product and had not acquired the secondary meaning that the law recognizes.

That the words had no such secondary meaning here was amply established by the testimony of many manufacturers and dealers in

handbags, wholly disinterested in the result of this litigation, that they themselves had manufactured or dealt in handbags under the same descriptive names and had advertised them in the same varied spellings for many years prior to the use of them by the plaintiffs, and that at least one large manufacturer had produced and sold similar handbags under the name " Corde " as recently as 1935, 1936 and 1937; by the testimony of a trade paper stylist who had known and used the word for many years to describe handbags made of corded embroidery; and, finally, by the testimony of the defendant's former partners who in their own competitive businesses had used the word in its different spellings both before and after their association with the defendant.

In order that words not otherwise capable of appropriation as a trade-mark may acquire a secondary meaning so as to afford a claimant protection in their use, they must be so associated in the mind of the buying public with the claimant's products as to mean to them that they are the claimant's products and none other. (*General Baking Co.* v. *Grocers' Baking Co.*, 3 F. Supp. 146.)    This court is convinced that the proof here not only falls far short of meeting that test, but that it clearly establishes the contrary. (*Sleight Metallic Ink Co.* v. *Marks, supra,* 666.)

There remains only the question of whether the acts and conduct of the defendant generally constituted unfair competition under all of the circumstances of the case.    It was pointed out that the defendant had been employed by the plaintiffs prior to his engaging in the manufacture of handbags, that he joined up with a competing firm which promptly moved into the same building in which the plaintiffs maintained their business, and that his subsequent adoption of the trade-mark " Kor Day," as embellished, resulted in some confusion.    A consideration of all the testimony, however, does not reasonably sustain a charge of unfair competition.    It appears that the defendant's service with the plaintiffs was not only brief but that it was of a type which could not result in the disclosure of trade secrets or of business contacts, that he left the plaintiffs to engage in the embroidery contracting business with one Mousilian, that he only met Koret and Levine through such contracting work, and that he became associated with them in the manufacture of handbags only after they had negotiated the lease for space at No. 38 West Thirty-second street, a building apparently specializing in handbag trade tenancies, and after they had assumed the name " Kor Day " to describe their product.    It appears, too, that the defendant has arranged to move from that building and has leased space elsewhere, and that this will eliminate the slight confusion that has heretofore resulted from the neighborliness of the

parties and their keen competition. Finally, it appears that the form in which the defendant is using its trade-mark (with the intertwined Mercury emblem) is unique and clearly distinguishable from the form in which the plaintiffs are using theirs, that their labels and markings are easily identifiable, and that their advertising matter is radically different. Under the circumstances, it may not be said that the proof presents a case of commercial piracy warranting the granting of injunctive relief, and such relief is, therefore, denied.

On the other hand, the defendant has also failed to substantiate the counterclaim set up in his amended answer, and such counterclaim is dismissed.

Findings having been waived, judgment is directed for the defendant, without costs. Settle judgment accordingly.