DOLLCRAFT CO. et al. v. NANCY ANN
STORYBOOK DOLLS, Inc.

No. 29270.

United States District Court.
N. D. California, S. D.

Nov. 30, 1950.

Mellin, Hanscom & Hursh, Oscar A. Mellin, Leroy Hanscom, and Jack E. Hursh, all of San Francisco, Cal., for plaintiffs-counter defendants.

Hugh N. Orr and William G. McKay, both of San Francisco, Cal., for defendant-counter claimant.

ROCHE, Chief Judge.

By this action plaintiffs seek the cancellation of certain trade-marks registered by the defendant in the U. S. Patent Office, injunctive relief, damages and other relief. Defendant counter claims, seeking relief from trade-mark infringements, injunctive relief, damages and other relief.

Plaintiff and counter defendant Dollcraft Doll Co. is now, and has been since 1946, a manufacturer and seller of miniature, dressed dolls. In 1948, Dollcraft began producing a series of eight dolls, each named "Who Am I?" and each dressed to represent some familiar character in children's fiction, such as Red Riding Hood, Little Miss Muffett and Little Bo-Peep. Shortly after its introduction this series was named the "Fairyland

Series", a name apparently adopted from the short verse printed on Dollcraft's price lists and brochures of that period, and which contained the lines:

"I am a little Friend of yours,

"Fairyland is where I dwell".

Within the same year of 1948, this series was increased to twelve dolls, each identified by the name of a particular fictional character or nursery rhyme personification which the doll was dressed to represent and comprising "Red Riding Hood", "Little Miss Muffett", "Little Miss Donnett", "Little Bo-Peep", "Mistress Mary", "Alice in Wonderland", "Rapunzel", "Gretel", "Curly Locks", "Goldilocks", "Sugar and Spice", and "Bessie Brooks".

Dollcraft also makes a doll dressed as a bride which is sold under the name of "June Bride".

Dollcraft first packaged its dolls in individual cardboard boxes which had a red top and a white bottom. It later began using, and now uses, a box consisting of a white bottom with a transparent, acetate top and also, for one series of dolls, individual, glass bottle containers.

During the first few months of its existence, Dollcraft applied no names of identification to its products. Beginning in 1946 or 1947, it applied to the red topped boxes a gummed label or seal on which the following words appeared: "Globe Trotters, Doll-Craft Co., San Francisco, California". Later, the boxes were rubber-stamped with the words, "Dollcraft Company, Santa Clara, California". The lids of the glass containers have, since they were first used in 1949, contained the words, "Dolls With a Story By Dollcraft, Santa Clara, California".

Defendant and counter claimant Nancy Ann Storybook Dolls, Inc. (hereafter referred to as Nancy Ann) is now, and has been since 1937, also a manufacturer and seller of miniature, dressed dolls.

Since 1941 Nancy Ann has applied the words "Storybook Dolls by Nancy Ann" to its complete line of dolls. Nancy Ann registered the word "Storybook" with the U. S. Patent Office in 1941 as a trade-mark for dolls, doll clothes and doll furniture and the word "Story" in 1950 as a trade-mark for dressed dolls.

Nancy Ann has, since its inception, made and sold certain dolls to which it applies the names of "Red Riding Hood", "Little Miss Muffett", "Little Bo Peep", "Mistress Mary", "Curly Locks", and "Goldilocks". It has also made and sold a doll named "Sugar and Spice" since about 1940 and one named "Little Miss Donnet" since about 1941. Nancy Ann has registered all of these names with the U. S. Patent Office, between 1942 and 1947, as trade-marks for dolls and doll clothes or for dressed dolls. From about 1938 until about 1946, all of its dolls of these names were sold under the series name of "Storybook Series" (spelled as "Story Book" until about 1940). Since about 1946, these same dolls have been included within either the "Fairytale Series", the "Fairyland Series", or the "Mother Goose Series". The name "Fairyland" was registered with the U. S. Patent Office in 1948 as a trade-mark for dressed dolls.

Since about 1941, Nancy Ann has also made a doll sold under the name of "June Girl", which name was registered in the U. S. Patent Office in 1943 as a trade-mark for dolls and doll clothes.

Nancy Ann packages its dolls in individual, white, cardboard boxes, printed on which, in multiple, diagonal lines, are the words "Nancy Ann Storybook Dolls", between which lines are additional, parallel lines of large polka dots, with both the words and the polka dots printed in a single color.

In October, 1949, two retail stores advertised Dollcraft dolls, including "Red Riding Hood", "Little Bo-Peep", and "Sugar and Spice", under the names of "Story Dolls" and "Story Book Dolls". Immediately thereafter, Nancy Ann served notices of alleged trade-mark infringements upon Dollcraft and certain customers of Dollcraft, including the two stores which had so advertised. With such notice, Nancy Ann demanded that the infringements and unfair competition cease and that accounting be made for all profits derived from such practices.

Dollcraft thereupon instituted this suit, denying that the names "Red Riding Hood", "Little Miss Muffett", "Little Bo Peep", "Mistress Mary", "Curly Locks", "Goldilocks", "Suger and Spice", "Little Miss Donnet", "June Girl", "Story", "Storybook" and "Fairyland" are valid trade-marks which Nancy Ann may exclusively appropriate and alleging, therefore, that Nancy Ann's notices of infringements constitute unfair competition. Nancy Ann relies on the validity of all of its registered trade-marks which are in issue here.

The issue for decision is whether Nancy Ann is entitled to the exclusive use of the names involved, either by reason of their being valid trade-marks or under the doctrine of secondary meaning.

■ While the registration of a name or term as a trade-mark raises a presumption of its legality, Brooks Bros. v. Brooks Clothing of Cal., D.C., 60 F.Supp. 442, 447, the mere registration does not establish that name or term as a valid trade-mark, for such presumption is rebuttable. National Nu Grape Co. v. Guest, 10 Cir., 164 F.2d 874, 876.

■■ The purpose of a trade-mark is to distinguish the goods of one person from those of another, Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 220 U.S. 446, 447, 453, 31 S.Ct. 456, 55 L.Ed. 536, and its primary and proper function is to identify the origin or ownership of the article to which it is affixed. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 412, 36 S.Ct. 357, 60 L.Ed. 713. It must be of such a nature as to permit of an exclusive appropriation by one person, Barton v. Rex-Oil Co., 3 Cir., 2 F.2d 402, 403, 40 A.L.R. 424, for unless the trade-mark performs its proper function, neither can the first adopter of it be injured by any appropriation or imitation of it by others, nor can the public be deceived. Canal Co. v. Clark, 13 Wall. 311, 323, 80 U.S. 311, 323, 20 L.Ed. 581.

■ The names "Fairyland" and "Sugar and Spice" serve such purpose and function and are capable of exclusive ap-

propriation; they are, therefore, valid trade-marks.

"Sugar and Spice" is a phrase abstracted from an old, familiar, nursery rhyme, possessing a meaning in its context, but none when used as the name of a doll. "Fairyland" means the land or abode of fairies, who are imaginary supernatural beings; Nancy Ann uses this word as a name for dolls which, while they may portray fictional characters, are neither representations nor likenesses of fairies. At most, these names may be suggestive (see Nims on Unfair Competition, 3d Ed., § 201), but they are not descriptive; they possess, in their use by Nancy Ann, only connotation and not denotation; they are arbitrary and fanciful names and thus valid trade-marks. Palmer v. Gulf Pub. Co., D.C., 79 F.Supp. 731, 734; see also Stork Restaurant v. Sahati, 9 Cir., 166 F. 2d 348, 355.

■■ The leading case of Canal Co. v. Clark, supra, 13 Wall. at page 323, 80 U.S. 323, establishes two rules which must not be overlooked: "No one can claim protection for the exclusive use of a trade-mark or trade-name which would practically give him a monopoly in the sale of any goods other than those produced or made by himself. If he could, the public would be injured rather than protected, for competition would be destroyed. Nor can a generic name, or a name merely descriptive of an article of trade, of its qualities, ingredients, or characteristics, be employed as a trade-mark and the exclusive use of it be entitled to legal protection." This Court finds that all of the other names claimed and registered as trade-marks by Nancy Ann, and which are in issue here, are incapable, inherently and because of the two rules just expressed, of functioning as valid trade-marks in their application by Nancy Ann.

■ Dollcraft claims the right to use the names of "Red Riding Hood", "Little Bo-Peep", "Little Miss Muffett", "Mistress Mary", "Little Miss Donnett", "Curly Locks", and "Goldilocks" because such names are descriptive of its dolls. Nancy Ann, while admitting the right of Doll-

craft to make dolls portraying such fictional characters, claims the exclusive right to the use of these names as valid trade-marks.

The dolls produced by each party show themselves to have been designed, created and dressed so as to be the likeness of the fictional character whose name they bear. Each doll of such name is a manifestation of the fictional character itself, whose name serves to identify and describe such doll. These names, as so applied, are descriptive; their use belongs to everyone and Nancy Ann cannot be given the right of their exclusive appropriation.

Nancy Ann claims that "June Girl" is infringed by Dollcraft's use of the name "June Bride", contending, even, that the word "June" may not be so used by others. The "June Girl" doll, on examination, shows itself to be a conceptual representation of a girl dressed for the month of June. It is not dressed in a bridal costume, rather it is clothed in light, summery dress, appropriate to an embodiment of the name itself. The name denotes the doll, not the manufacturer; it is a descriptive name, invalid as a trade-mark. Even were this Court to find "June Girl" a valid trade-mark, however, there is insufficient evidence to hold that "June Bride" constitutes either an infringement of "June Girl" or an unfair use of the word "June".

"Story" or "Story Book" properly serve as generic names for all that class of dolls which portray or represent fictional characters, as does the name "Dolls With a Story". Each of these names which is used by Nancy Ann serves the adjectival function of correctly describing such a class of dolls and both are likewise invalid as trade-marks.

As to all of the above names here held invalid as trade-marks, the language of the Canal Co. case, supra, 13 Wall. at page 328 and page 324, 80 U.S. at page 328 and page 324, may be paraphrased to say that the dolls produced by Nancy Ann are as

truly described by these names, as are the dolls produced by Dollcraft or by Hallmark Cards.[1] The names are descriptive ones which do not point to the origin or ownership, nor indicate in the slightest degree the person, natural or artificial, who manufactured such dolls or brought them to market. As so applied, all of the above names are incapable of performing the function of a trade-mark; they are not susceptible of exclusive appropriation by one party for they are names which, from the nature of the fact they are used to signify, may be employed by others with equal truth and with equal right for the same purpose.

The evidence is insufficient to hold that any of these names, found not to be trade-marks proper, have acquired a secondary meaning denoting Nancy Ann as the source of the dolls to which they are applied.

Evidence that a retailer sold Dollcraft dolls under the name of Story Book dolls is proof only of the sales and not of the issue in question. Advertising is the effort expended in the attempted achievement and not the achievement of the alleged result (i. e., secondary meaning); a large sales volume may be no more than the success resulting from methods of sales promotion. These factors, as well as the fact of the length of time that Nancy Ann has used such names, in the absence of sufficient evidence tending to show that such names have become known to the public or to dealers as denoting a product of Nancy Ann's, are found not to meet the burden of proof necessary to establish secondary meanings.

Because both parties are producing dolls of similar size and common conception, there is a natural resemblance between their products. Lacking, however, are the usual indicia of fraud or palming off on the part of Dollcraft. The evidence fails to show that Dollcraft has represented, by marks, signs, labels, colors, packages, or in any other way, that its

1. Introduced into evidence were certain paper dolls manufactured by Hallmark Cards, some of which are named "Little Miss Muffett", "Little Bo-Peep", and "Little Red Riding Hood".

dolls are manufactured by Nancy Ann; on the contrary, the evidence shows that Dollcraft identifies its products by its own name, clearly and unmistakably. It may be said of Dollcraft's use of these names (here found to be descriptive) which have been in prior use by Nancy Ann, "* * * that the use by a second producer, in describing truthfully his product, of a name or combination of words already in use by another, may have the effect of causing the public to mistake as to the origin or ownership of the product, but if it is just as true in its application to his goods as it is to those of another who first applied it, and who therefore claims an exclusive right to use it, there is no legal or moral wrong done. Purchasers may be mistaken, but they are not deceived by false representations, and equity will not enjoin against telling the truth". Canal Co. v. Clark, supra, 13 Wall. at page 327, 80 U.S. at page 327. Since it is found that the dissimilarities outweigh the similarities of their products and since fair competition is to be encouraged, the Court finds no reason to enjoin Dollcraft from the use of these descriptive names.

Under the circumstances, this Court is of the opinion that it would be inequitable to award an accounting in favor of, or against, either party.

In accordance with the foregoing and upon findings of fact and conclusions of law in accordance therewith, it is, therefore

Ordered:

(1) That the following trade-mark registrations be cancelled:

> No. 389114 — Storybook
> " 395451 — Goldilocks
> " 395454 — Little Bo Peep
> " 403261 — June Girl
> " 404576 — Mistress Mary
> " 404581 — Curly Locks
> " 404586 — Little Miss Donnet
> " 420077 — Red Riding Hood
> " 432208 — Little Miss Muffet
> " 525896 — Story;

(2) That there be issued a writ of injunction perpetually restraining plaintiffs from infringing the names "Sugar and Spice" and "Fairyland"; and

(3) That there be issued a writ of injunction perpetually restraining defendant from interfering with plaintiffs' use of those names which are here ordered cancelled as registered trade-marks.