55 CCPA

### Application of COLONIAL STORES INCORPORATED.

### Patent Appeal No. 7925.

United States Court of Customs
and Patent Appeals.
April 25, 1968.

Matthew H. Patton, Atlanta, Ga., Kilpatrick, Cody, Robergs, McClatchey & Regenstein, Atlanta, Ga., for appellant.

Joseph Schimmel, Washington, D. C., (S. Wm. Cochran, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH and ALMOND, Judges.

ARTHUR M. SMITH, Judge.

The issue here presented is whether one who combines admittedly descriptive words, i. e., "sugar" and "spice," and uses the combined terms as a trademark, may properly be refused registration of the combined terms when applied to goods other than those which are directly described by such words and when an association of a concept foreign to the goods is said to attach to the combined mark. On this record, it is clear that both sugar and spice may be present as ingredients in at least some of the bakery products to which the mark is applied. Resolution of this issue turns on whether such a mark is "merely descriptive" of those goods within the meaning of section 2(e) (1) of the Trademark Act of 1946, 15 U.S.C. § 1052(e) (1).[1]

Appellant's application,[2] as subsequently amended, asserts use of the mark "SUGAR & SPICE" for "Bakery products, in Class 46 namely, cakes, cookies, breads, rolls, donuts, pastries, crack-

---

1. The pertinent portion of that statute provides that:

No trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

* * * * *

(e) Consists of a mark which, (1) when applied to the goods of the applicant is merely descriptive or deceptively misdescriptive of them * * *

2. Serial No. 143,935, filed May 7, 1962.

ers." The examiner considered the mark sought to be registered to be "merely descriptive" of the goods. He stated, in his final refusal to register, that:

* * * When used on sweet bakery products, the wording "Sugar & Spice" is considered to clearly describe goods containing sugar and spice, notwithstanding the nursery rhyme "Sugar and Spice and Everything Nice, etc."

The decision in the Fleetwood Co. v. The Mitchum Co., [51 CCPA 831, 323 F.2d 1015], 139 USPQ 281 [1963], cited by applicant, is not considered in point here for the reason such decision does not involve wording which constitutes the name of the *ingredients* of the skin cream involved. [Brackets added.]

The board affirmed that rejection,[3] the result being reported at 148 USPQ 768 (TTAB 1965), stating:

It is a matter of common knowledge that sugar and spices are used singly and in combination in making a wide variety of bakery products, including breakfast breads and rolls, donuts, cakes, cookies and the like. The use of the terms "sugar" and "spice" in combination is but a normal use of the English language to describe bakery products, containing sugar and spice as ingredients, and, on the record presented in this case, we are not persuaded that "SUGAR & SPICE" would have anything other than a descriptive significance to the purchasers of applicant's goods. * * *

We do not believe the rejection can stand on the basis stated. The often-cited principle embodied in section 2(e) (1) was stated some 67 years ago by the Supreme Court in Elgin National Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 673, 21 S.Ct. 270, 45 L.Ed. 365 (1901) that a trademark:

* * * may consist in any symbol or in any form of words, but as its office is to point out distinctively the origin or ownership of the articles to which it is affixed, it follows that no sign or form of words can be appropriated as a valid trademark which from the nature of the fact conveyed by its primary meaning, others may employ with equal truth, and with equal right, for the same purpose.

In Andrew J. McPartland, Inc. v. Montgomery Ward & Co., Inc., 164 F.2d 603, 35 CCPA 802 (1947), cert. denied, 333 U.S. 875, 68 S.Ct. 904, 92 L.Ed. 1151 (1948), this court noted that it was not the purpose of Congress, by the language of section 2(e) of the Trademark Act of 1946, to provide for the registration of trademarks which are merely descriptive of the character or quality of the goods upon which they are used,[4] placing reliance on the statement of the Supreme Court in Beckwith's Estate v. Commis-

---

3. During the course of prosecution, it was the position of the examiner that when used on applicant's goods, the mark for which registration is sought was considered " * * * to clearly describe goods containing sugar and spice * * *." In his statement of the rejection to the board, he asserted:

> The specific ground of rejection is that the mark is merely descriptive (or deceptively misdescriptive) of applicant's goods, being indicative, in the Examiner's opinion, that the bakery products contain sugar and spices.

His argument, however, was directed only to the issue of whether the mark is "merely descriptive" of applicant's goods. The board confined its discussion to that issue.

Moreover, the Patent Office did not cast its refusal to register on the basis that appellant's trademark could not serve to distinguish its goods from the goods of others under section 45 and the preamble to section 2 of the Trademark Act of 1946. We thus consider the issue raised as one solely arising under 2(e) (1) of that Act. See In re G. D. Searle & Co., 360 F.2d 650, 53 CCPA 1192 (1966).

4. See also In re Hercules Fasteners, 203 F.2d 753, 40 CCPA 944 (1953). Section 5 of the Trademark Act of 1905 denied registration to marks which are " * * * merely in words or devices which are descriptive of the goods with which they are used, or of the character or quality of such goods * * *." See Act of February 20, 1905, c. 592, § 5, 33 Stat. 725.

sioner of Patents, 252 U.S. 538, 543, 40 S.Ct. 414, 416, 64 L.Ed. 705 (1920):

> It was settled long prior to the Trade-Mark Registration Act [of 1905] that the law would not secure to any person the exclusive use of a trade-mark consisting merely of words descriptive of the qualities, *ingredients* or characteristics of an article of trade; this for the reason that the function of a trade-mark is to point distinctively, either by its own meaning or by association, to the origin or ownership of the wares to which it is applied, and words *merely descriptive* of qualities, *ingredients* or characteristics, when used alone, do not do this. Other like goods, equal to them in all respects, may be manufactured or dealt in by others, who, with equal truth, may use, and must be left free to use, the same language of description in placing their goods before the public. [Citations omitted.] [Brackets and emphasis added.]

■ Thus, a mark which merely denotes the ingredients, quality or composition of an article is not capable of being exclusively adopted and used as a trademark since, for policy reasons, *descriptive words* must be left free for public use.[5] On the other hand, a legal distinction, albeit often obscure, has been drawn between terms that are not merely descriptive, but rather are only suggestive of the goods.[6]

■ One of the tests to determine whether a given mark is "merely descriptive" under the Act is based upon what it would mean to the potential consumer when applied to applicant's goods. To make this test meaningful, it is necessary, therefore, to consider the established usages and associations which inhere in the words "sugar" and "spice" independently and then to compare them with the associations of the composite mark "SUGAR & SPICE" for which registration is sought.

It is appellant's position that:

> The mark "SUGAR & SPICE" immediately and automatically recalls to mind "sugar and spice and everything nice" from the well known nursery rhyme. The second portion of that phrase follows the first as the night follows the day. The association is inescapable. The pleasant connotation of those words, familiar to most of us since early childhood, is the first and paramount impression evoked by this mark. Appellant employs this favorable suggestion in a distinctive trademark usage.

As above noted, the board decided that "The use of the terms 'sugar' and 'spice' in combination is but a normal use of the English language to describe bakery products * * *."

While appellant admits that the individual words "sugar" and "spice" are generic terms which have ordinary meanings which describe the commodities "sugar" and "spice," when used alone, appellant argues that the combination of two descriptive terms into an arbitrary or fanciful word or phrase may convert those words into a distinctive mark. See In re Ada Milling Co., 205 F.2d 315, 40 CCPA 1076 (1953); Henry Muhs Co. v. Farm Craft Foods Inc., 37 F.Supp. 1013, 49 USPQ 162 (E.D.N.Y.1941). He adds that this may be true even in those cases where the words thus combined

---

5. See, e. g., Armstrong Paint & Varnish Works, v. Nu-Enamel Corp., 305 U.S. 315, 335–336, 59 S.Ct. 191, 83 L.Ed. 195, 39 USPQ 402, 409 (1938); Blisscraft of Hollywood v. United Plastics Co., 294 F. 2d 694, 698, 131 USPQ 55, 59–60 (2d Cir. 1961); 3 Callmann, Unfair Competition and Trademarks § 71 (2d ed. 1950); Derenberg, Trade-Mark Protection and Unfair Trading § 20 (1936); Vandenburgh, Trademark Law and Procedure § 4.30 (1959).

6. As Judge Learned Hand stated in Franklin Knitting Mills, Inc. v. Fashionit Sweater Mills, Inc., 297 F. 247 (S.D.N.Y. 1923), aff'd per curiam, 4 F.2d 1018 (2d Cir. 1923), deciding whether "Fashionknit" or neckties or knitted cloths of fabrics was *merely* descriptive of those goods:

> It is quite impossible to get any rule out of the cases beyond this: That the validity of the mark ends where suggestion ends and description begins.

are, prior to combination, descriptive of an ingredient, component or function of the goods to which the mark is applied, citing Ex parte Barker, 92 USPQ 218 (Com.Pat.1952), discussed later.

Whether a trademark is "reminiscent or suggestive" of something more than the character, quality or ingredients of the goods may also depend on factors considered in Blisscraft of Hollywood v. United Plastics Co., supra note 5, where the mark "POLY PITCHER" was held not to be "merely descriptive" of polyethylene pitchers. One of the reasons stated was:

> Moreover, "Poly Pitcher" is reminiscent or suggestive of Molly Pitcher of Revolutionary time. As used, it is an incongruous expression, and has the characteristics of a coined or fanciful mark.

In a similar vein is Ex parte Barker, supra, wherein the Assistant Commissioner considered a refusal to register on the Principal Register the mark "CHERRY-BERRY-BING" applied to "fruit and berry preserves." While the issue there considered was whether "CHERRY-BERRY-BING" was "capable of functioning as a trademark to distinguish applicant's goods in commerce," the words were considered by the examiner to be "generic and merely indicative of the principal ingredients of applicant's goods." There, it was held, 92 USPQ at 219, that:

> While it may be true that each of the individual words in the present applicant's mark are generic and thus independently unregistrable, it seems to me that their unusual association or arrangement in the applicant's mark results in a unique and catchy expression which does not, *without some analysis* and rearrangement of its components suggest the contents of applicant's goods. I am constrained to disagree with the examiner's holding in the present case that the applicant's

mark is incapable of functioning as a trade mark to distinguish the applicant's goods in commerce. [Emphasis added.]

The board in In re De-Raef Corp., 120 USPQ 318 (TTAB 1959), in considering the mark "CULTURED" for pancake mix made from a list of ingredients including "defatted cultured milk powder," reversed the examiner, and made the observation pertinent here that.

> Applicant, however, does not sell milk, cultured milk, or powdered cultured milk. It sells pancake mix, and the pancake mix has been neither exposed to nor treated by any bacillus culture of any kind. "CULTURED" is not merely descriptive of applicant's pancake mix. It is a term which may suggest to some purchasers that cultured milk is used as an ingredient of the product, but it may not have any such suggestive significance to a substantial segment of the average purchasers of the product.

We are cognizant of the usual practice of selling baked goods in stores which also sell sugar and spices as individual commodities. As appellant concedes, the terms "sugar" and "spice" used *individually* are well known and well understood by the purchasing public. However, when combined and used on bakery goods, we think they may function as an indication of more than a mere description of the ingredients of the goods on which the mark is used and, on the record made below, are not "merely descriptive" of such goods within the meaning of section 2. On the record below, the mark clearly does not tell the potential purchaser *only* what the goods are, their function, their characteristics or their use, or, of prime concern here, their ingredients.

The immediate impression evoked by the mark may well be to stimulate an association of "sugar and spice" with "everything nice." [7] As such, on the

---

7. See Dollcraft Co. v. Nancy Ann Storybook Dolls, Inc., 94 F.Supp. 1, 88 USPQ 18 (S.D.Calif.1950) aff'd, Nancy Ann Storybook Dolls, Inc. v. Dollcraft Co., 197 F.2d 293, 94 USPQ 290 (9th Cir. 1952) where the mark "Sugar and Spice" on

record below, the mark, along with the favorable suggestion which it may evoke, seems to us clearly to function in the trademark sense and not as a term *merely descriptive* of goods. To the extent that the nursery rhyme is familiar to one seeing or hearing the mark, his recall is undoubtedly stimulated to make the association with "everything nice" but this in no way defeats the distinctive nature of the composite word mark as applied to the listed products.

Nor do we find that the decisions cited by the solicitor as pertinent here require a different result. In each of the cited cases, General Baking Co. v. Grocers' Baking Co., 3 F.Supp. 146 (W.D.Ky. 1933); ("SUNSHINE VITAMIN D" applied to bread containing Vitamin D); Quaker Oats Co. v. General Mills, Inc., 45 F.Supp. 462 (N.D.Ill.1942), aff'd, 134 F.2d 429 (7th Cir. 1943), ("OATIES" applied to oat cereal); Skinner Mfg. Co. v. General Foods Sales Co., 52 F.Supp. 432 (D.Neb.1943), aff'd, Skinner Mfg. Co. v. Kellogg Sales Co., 143 F.2d 895 (8th Cir. 1944), cert. denied, Id. v. General Food & Sales Co., Inc., 323 U.S. 766, 89 L.Ed. 613 (1944), ("RAISIN BRAN" applied to cereal); William Wrigley, Jr., Co. v. Grove Co., 161 F. 885 (S.D.N.Y. 1908), aff'd, 183 F.2d 99 (2d Cir. 1910), ("SPEARMINT" applied to chewing gum); we think that the marks there in issue were devoid of the reminiscent, suggestive or associative connotation which we here find to be persuasive as presented on the record below.

Thus, *on the present record,* the decision of the Trademark Trial and Appeal Board must be reversed.[8]

Reversed.

WORLEY, C. J., concurs in the result.

---

dolls was considered to be capable of distinguishing appellant's goods from the goods of another and to function to identify origin of the goods. There the district court stated:

"Sugar and Spice" is a phrase abstracted from an old, familiar nursery rhyme, possessing a meaning in its context, but none when used as the meaning of a doll. * * *

8. The board refers in its opinion to "A matter of common knowledge" (without indicating a basis therefor). It has been noted in the widely used and well known "Good Housekeeping Cook Book," Edited by Dorothy B. Marsh, Copyright 1942, 1944, 1949 by Hearst Magazines, Inc., Second Printing May 1955, Copyright by

The Hearst Corp., Published by Good Housekeeping Book Division, 250 West 55th Street, New York, N.Y., Library of Congress Card Catalog No. 54–10951, the index contains three references to "Sugar and Spice" used in combination as the generic name of a particular type of bun, and on page 347, the following recipe is given for what is there called "Sugar-and-Spice Buns."

"Bake Williamsburg Buns, above; dip tops and sides *at once* into 6 tablesp. melted butter or magarine; then roll in combined ½ cup granulated sugar and 1 teasp. cinnamon."

However, no rejection on this basis is of record; thus, this issue is not before us. 15 U.S.C. § 1071(a) (4).