**COMPUTERLAND CORPORATION,**
**Plaintiff,**

v.

**MICROLAND COMPUTER**
**CORPORATION,**
**Defendant.**

**No. C–83–3076 SW.**

United States District Court,
N.D. California.

March 30, 1984.

Dismissed With Prejudice
Sept. 6, 1984.

Hilary E. Pearson, Arnold, White & Durkee, Palo Alto, Cal., Rodney K. Caldwell, J. Paul Williamson, Arnold, White & Durkee, P.C., Houston, Tex., Jonathan Greenfield, Ian N. Feinberg, Ware, Fletcher & Freidenrich, A Professional Corporation, Palo Alto, Cal., for plaintiff Computerland Corporation.

D. Peter Harvey, Horning, Janin & Harvey, San Francisco, Cal., Michael A. Ladra, Peter J. Courture, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, Cal., Milton W. Schlemmer, Debra Dahl, Flehr, Hohbach, Test, Albritton & Herbert, San Francisco, Cal., for defendant Microland Computer Corp.

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

SPENCER WILLIAMS, District Judge.

### ORDER AND MEMORANDUM OF LAW

Upon consideration of written memoranda in support and opposition to defendant's motion for partial summary judgment, and oral argument entertained on February 1, 1984, IT IS HEREBY ORDERED that DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT on plaintiff's claims 1 and 2 is hereby **GRANTED**. A brief explanation of this Court's order is provided below.

**FACTS:**

In 1976, plaintiff was incorporated in Oakland, California, as a franchisor of retail microcomputer outlets. Originally planning to operate as "Computer Shack", plaintiff dropped its plans when contacted by Radio Shack (a Tandy subsidiary), which voiced objection to this use. Plaintiff has grown to over 600 franchises throughout the U.S., although mainly concentrated in West and Southwest, and the rest of the world. It has sold over $1.5 billion in retail computer goods since 1977, making it the fourth largest retailer of major electronic appliances in the U.S.—a vivid example of a business benefiting from, and fueling, the spectacular growth of demand for computers in modern society.

In November 1982, defendant operating a single store selling computer goods changed its name from "The Computer Post of Newark" to "Microland". In January 1983, plaintiff learned that defendant was operating in direct competition with its franchisees, and attempted to dissuade its continued use. Those efforts failed, and this suit was filed in June 1983.

Simultaneously, five other "computer related" retailers: Businessland; Techland; DECland; Softwareland and Serviceland have been pressured to drop their use of these names which Computerland finds offensive. Thousands of other computer, and noncomputer related companies currently use the "land" suffix to denote the availability of goods suggested by the prefix appended. Examples include: Flowerland, Carpetland, Adventureland, Plantland, Musicland, and countless others. Other instances of similar suffixes include: "mart", "center" and "shop".

Although plaintiff's substantive opposition to this motion was late, and not entirely within the purview of the leave granted upon its Fed.R.Civ.P. 56(f) affidavit to permit plaintiff to complete outstanding discovery, we note for the record that all relevant and admissible materials sub-

mitted in opposition to defendant's motion were considered on their merits.

**LAW:**

This is an instance where plaintiff's meteoric, and virtually overnight, success under its name cannot overcome that name's inherent weakness through its linguistic tradition and the common parlance of the marketplace. To do so would have required both plaintiff's exclusive and well-publicized use over a lengthier period, and a substantial evolution in consumer awareness and identification of name and entity.

Defendant took the offensive in plaintiff's suit for federal Lanham Act and state law claims, because invalidity or unprotectability of a registered trademark is effectively an affirmative defense to claims of infringement, unfair source designation and other allegations of unfair competition. Although defendant bore the burden of production and proof on each prong of the analysis, the burden shifted to plaintiff in two important respects: first, plaintiff was required to come forward with sufficient showing that facts material to the relevant issues were in genuine dispute, sufficient to forestall consideration as a matter of law; and, second, that its name, although found to be "descriptive", is nonetheless protectable because it has acquired "secondary meaning". Plaintiff failed to discharge either burden.

■ Registration of trade or service marks with the U.S. Copyright Office affords presumptive protection in the use of that mark. Such registration, as plaintiff did in late 1976 or early 1977, does not insulate the mark from the sort of legal challenge defendant mounts here. *See, e.g., Dollcraft Co. v. Nancy Ann Storybook Dolls, Inc.,* 94 F.Supp. 1 (N.D.Cal. 1950), *aff'd* 197 F.2d 293 (9th Cir.) *cert. denied,* 344 U.S. 877, 73 S.Ct. 172, 97 L.Ed. 679 (1952). The U.S. Copyright Office merely performs the mechanical function of scriviner: one sends in the fee and mark; the Office verifies that that particular mark has not yet been recorded—if not, it records it. Registration of the mark includes no review of the legal status of the mark; determination of whether the mark is protected against an instance of alleged encroachment is left solely within the judgment of the courts. *Id.*

There are two components of determining whether "Computerland" is a protectable mark. First, we must decide what type of a mark it is: "generic", "descriptive", "suggestive" or "fanciful"; and, second, if found to be, at best, descriptive, whether, as a matter of fact, it has acquired sufficient "secondary meaning" to exempt it from the usual rule that descriptive marks are not protected, regardless of registration.

**(1) Is "Computerland" protectable as a matter of law?**

■ Although the Ninth Circuit appears to construe "genericness" very broadly (*see, e.g., Anti-Monopoly, Inc. v. General Mills Fun Group,* 611 F.2d 296 (9th Cir. 1979)), it has also recognized that the lines between these classifications are not clear. *HMH Publishing Co. v. Brincat,* 504 F.2d 713, 716 (9th Cir.1974).

These classifications, from least protected to most protected from appropriation, are (1) "generic"

one that refers, or has come to be understood as referring, to the genus of which the particular product or service is a species. It cannot become a trademark under any circumstances...;

(2) "descriptive"—"specifically describ(ing) a characteristic or ingredient of an article or service. It can, *by acquiring a secondary meaning, i.e.,* becoming 'distinctive of the applicant's goods', become a valid trademark" (*emphasis added*); (3) "suggestive"—"suggests *rather than describes an ingredient,* quality or characteristic of the goods *and requires imagination,* thought, and perception to determine the nature of the goods", and is afforded protection from registration without proof of secondary meaning; and, (4) "arbitrary or fanciful"—"applied to *words invented solely* for their use as trademarks and enjoys all the rights ...". *Surgicenters of America, Inc. v. Med. Dental Surgeries, Co.,*

601 F.2d 1011 (9th Cir.1979), quoting *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9–11 (2d Cir.1976).

We agree with defendant: at best, plaintiff's mark is descriptive. "Computerland" used as a name to denote a place to buy computers is "descriptive", although perilously close to the "generic" line. In a deposition taken in the *Computerland v. Businessland*, C 83–2008 WAI (SJ), plaintiff's Vice-President of marketing testified that the use of "land" as a suffix to "computer" meant to him "Retail stores where people can access knowledge of and products relating to microcomputers ... 'land' indicating a place to buy computers". Plaintiff understandably attempts to qualify this articulation of the inherent weakness of its name, but we merely cite this testimony as illustrative of the virtual reflection of name to service.

The plaintiff concedes that "computer" and "land" are independently generic terms, which acquire a more protected status when combined. However, this is not the law. The Ninth Circuit has clearly held that the mere combination of two common, and presumably generic, terms like "Surgi" (a common abbreviation for surgical) and "center" (as a location) cannot together constitute more than a generic term. *Surgicenter of America, Inc., supra*, at 1015. *Accord, National Conf. of Bar Examiners v. Multistate Legal Studies, Inc.*, 692 F.2d 478 (7th Cir.1982) (use of "Multistate Bar Examination" unprotected, as components are common descriptives); *S.S. Kresge Co. v. United Factory Outlet, Inc.*, 598 F.2d 694 (1st Cir.1979) (the "Mart" and "K-Mart"; "Mart" held generic); *Abercrombie & Fitch, supra* ("Safariland" as the name of a store which sells "Safari" clothes held unprotectible as generic).

However, since the line between generic and descriptive is less than absolutely certain, and appellate review of this determination *de novo*, we proceed with our analysis assuming, *arguendo*, that Computerland is descriptive. Since there may be some dispute as to whether the plaintiff's use of "land" invokes a denotative or suffi-ciently primary definition, or merely an inferential, slang or symbolic meaning, we err, if at all, by affording plaintiff the benefit of any doubt.

This benefit does not extend so far as accepting plaintiff's half-hearted contention that its use is "suggestive". We believe this appropriately rejected; "Computerland" was selected by plaintiff for the same reason that it cannot today be afforded much regard: it literally communicates the goods and services offered by the plaintiff.

**(2) Has Computerland become protectible by having acquired a sufficient "secondary meaning", notwithstanding its legally deficient status?**

 As the advertising/market survey offered by plaintiff illustrates, consumer awareness of "Computerland" as a proper noun is low or, at best, is in the process of being developed. It is understandable that, as an early entrant in a nascent industry, plaintiff would select a "common descriptive" which is not a sufficient deviation from a natural usage or unusual unitary combination to permit registration. *Id.* at 1018.

However, as the Ninth Circuit held, in reversing this Court's solicitude for General Mills' claim to "Monopoly,"

> When a trademark *primarily* denotes a product, not the product's producer, the trademark is lost ... (because) one competitor will not be permitted to impoverish the language of commerce by preventing his fellows from fairly describing their own goods.

> . . . .

> Even if only one producer—Parker Brothers—has ever made the Monopoly game, so that the public necessarily associates the product with that particular producer, the trademark is invalid unless source identification is its primary significance.

Id. at 301–302.

**CONCLUSION:**

Here, both plaintiff's and defendant's businesses can be described by the name

"computerland", or some variant of the word "computer" attached to "land". In *Telemed Corp. v. Tel-Med, Inc.*, 588 F.2d 213 (7th Cir.1978), the Seventh Circuit, in rejecting the plaintiff's efforts to protect its use of "Telemed" against defendant's use of "Tele-Med", adopted the Eighth Circuit's rule that combination of two descriptive words: "Tel" (for telephone) and "Med" (for medicine or medical) to form one new, arguably arbitrary or fanciful, did not automatically elevate what was essentially a descriptive mark to the status of "suggestive" or "fanciful". *Id.* *Cf.* *Hamm v. Knocke*, 374 F.Supp. 1183, 1187 (E.D.Cal.1973) (term "descriptive" because "it requires little imagination or thought to interprete this term"); *Vision Center v. Opticks*, 596 F.2d 111, 116–117 (5th Cir. 1979), *cert. denied*, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980) (four-part test to drawing distinction between descriptive and suggestive).

Thus, we conclude that the mark "Computerland" is either generic or descriptive, at most. As the Seventh Circuit explains, the result of such a conclusion is to rebut the "statutory presumption of validity ... accorded ... marks registered under the Lanham Act ... § 1115(a). *Surigicenters, supra,* at 1118. registration. Upon the evidence presented to this Court upon the defendant's motion for summary judgment, we have also concluded that plaintiff's mark has not yet acquired the level of consumer awareness required to establish a "secondary meaning" such as to render a legally unprotected mark factually protected. See *Kellogg v. National Biscuit Co.*, 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938); *Anti-Monopoly Inc. v. General Mills Fun Group*, 611 F.2d at 302; *Hamm v. Knocke*, 374 F.Supp. at 1187.

Therefore, summary judgment on defendant's motion that "Computerland" is legally unprotectible is appropriate, and as such plaintiff's claim for tradename infringement upon the Lanham Act is unsupportable as a matter of law.

As for the plaintiff's second federal claim for unfair source designation, this claim falls with our resolution of the mark's vulnerability, so summary judgment is properly entered for defendant on Claim 2 as well. We dismiss the plaintiff's pendent state law claims 3 through 6, in order for the plaintiff to proceed in state court, if the plaintiff so desires.

**IT IS SO ORDERED.**