T. Henderson
Paper No. 16

F153

FOR PUBLICATION IN FULL

U. S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

In re Associated Theatre Clubs Company

———

Serial No. 557,499

———

Morgan & Finnegan for applicant.

———

Dominick Salemi, Trademark Examining Attorney, Law Office 4
(Thomas Lamone, Managing Attorney).

———

Before Rooney, Hanak and Quinn, Members.

Opinion by Rooney, Member:

Associated Theatre Clubs Company has applied to register
the term "GROUP SALES BOX OFFICE" for theater ticket sales
services claiming first use as of August 25, 1977.  Registration
was refused under Section 2(e)(1) on the ground that the term is
merely descriptive as applied to the identified services.  Ap-
plicant then amended the application to seek registration under
Section 2(f) of the Trademark Act.  In response, the Examining
Attorney held that "GROUP SALES BOX OFFICE" is nothing more than
an apt descriptive name for the services and, despite applicant's
evidence, filed to show that the term had become distinctive for

these services, finally refused registration.

The Examining Attorney relied on a dictionary definition for "box office"[2] and submitted a copy of the results of a Lexis/Nexis search consisting of excerpts from eight published articles offered to show that the term "group sales" is commonly used in the trade in connection with "box office" sales.

In connection with its claim that the term is distinctive and thus registrable, applicant submitted copies of a statement signed by twenty-one of applicant's customers which says that they have used applicant's services for a number of years and "regard the name 'GROUP SALES BOX OFFICE' as identifying the services of Associated Theatre Clubs Company only, and not those of any other party offering the same or similar services". Applicant also filed the affidavit of Janet Robinson, one of the partners of applicant, attesting to substantially exclusive and continuous use since 1977 of the term sought to be registered, extensive advertising and promotion as well as high sales volume. Also filed were a number of brochures used in promoting applicant's services and a copy of an article from the August 1986 issue of the Manhattan, Inc. magazine, concerning applicant and its services. Finally, applicant notes the definition of "box office" in Webster's Third New International Dictionary, i.e., "the office in

---

[2] The Examining Attorney stated that "BOX OFFICE is defined in WEBSTER'S DICTIONARY as a place where tickets are sold." If a dictionary is cited, more complete information should be provided. There are any number of dictionaries which could be called Webster's Dictionary, each of which has numerous editions.

2

a theatre, auditorium, or stadium where tickets of admission are sold".

Applicant argues that the Examining Attorney has no documented support for his position while applicant has conclusively demonstrated that none of its competitors refer to their services as "GROUP SALES BOX OFFICE"; that "box office" is only used and understood to refer to the place in a particular theater where tickets for events at that theater are sold while applicant, whose services are generically known as "ticket brokering" services, offers tickets for various events taking place at different, unrelated venues. It is concluded that applicant's reference to itself as a "box office" is fanciful and would require some thought and reflection to understand the relationship of actual box offices to applicant's services.

Turning first to the question of the nature of the term "GROUP SALES BOX OFFICE", applicant is advised that its definition of the term "box office" is one of only a few such restrictive definitions. Other dictionaries have broader definitions such as, "an office for the sale of admission tickets, as in a theater" (Webster's New Universal Dictionary 1979); "an office (as in a theater) where tickets of admission are sold" (Webster's New Collegiate Dictionary 1979); "Theat - 1. The office in which tickets are sold" (The American College Dictionary 1970). It is apparent that, although the place where tickets are sold in a theater is called a "box office", the term is easily extended to

3

an office where tickets for admission to a public event are sold which is not necessarily located in a theater (stadium or auditorium). The phrase, "as in a theater" clearly indicates that this is merely an example of one type of "box office".

Apart from the foregoing, we note that the Court of Customs and Patent Appeals, in canceling a supplemental registration for the term "TURBODIESEL" for internal combustion engines [Cummins Engine Co., Inc. v. Continental Motors Corporation, 359 F.2d 892, 149 USPQ 559 (CCPA 1966)], stated as follows:

> We recognize that the engines to which the term has been applied by appellant are not turbines plus diesels, but diesel engines having exhaust driven turbine superchargers. However, it is not required that the name precisely describe and define the goods in order to be incapable of registration under Section 23. [Section 23 provides for the registration on a supplemental register of marks which, although not registrable on the principal register, are capable of distinguishing the applicant's goods or services. Terms which are so highly descriptive as to be incapable of performing this function may not be registered, even on the supplemental register.] (bracketed material added). We think "turbodiesel", to be naturally and adequately nominative of engines having exhaust driven turbine superchargers.

By the same token, we do not believe that the term "box office" is any the less an apt descriptive term as applied to applicant's services because of a physical location apart from the venue of the events to which applicant's ticket sales apply. Moreover, applicant's identification of services does not restrict

4

the performance of its services to a location physically remote from the theater, auditorium or other site of the performance to which applicant sells tickets. In the absence of any such restriction, it is presumed that the services may be offered at the site of the performance or away from it.

Nor are we persuaded that when applicant adds the term "GROUP SALES", clearly shown to be generic by applicant's own as well as the Examining Attorney's Lexis/Nexis evidence, to "BOX OFFICE" it has created a registrable composite.

While it may well be that some combinations of descriptive terms may result in a nondescriptive expression (see In re Colonial Stores, Inc., 394 F.2d 549, 157 USPQ 382 (CCPA 1982) where SUGAR & SPICE was held not to be merely descriptive of bakery products), this is not always the case (see In re Gagliardi, Bros., Inc., 218 USPQ 181 (TTAB 1983) holding "BEEFLAKES" for frozen thinly sliced beef merely descriptive and In re Gould Paper Corp., 834 F.2d 1017, 5 USPQ2d 1110 (Fed. Cir. 1987) affirming the Board's finding that SCREENWIPE is generic as applied to wipes for cleaning computer and television screens). Whether a term which is created by combining two or more unregistrable words may achieve registration depends on whether, in combination, a new and different commercial impression is achieved and/or the term so created imparts a bizarre or incongruous meaning as used in connection with the goods or services. See

In re National Shooting Sports Foundation, 219 USPQ 1018 (TTAB 1983) and cases cited therein. In this case, applicant has combined two terms which each name applicant's activities and which, in combination, continue to do so.

Applicant, citing the Manhattan, Inc. magazine article, argues that it does not serve as a "box office"; that its services are called "ticket brokering"; and that it serves as a conduit for a "box office".

It is well settled that there may be more than one apt descriptive name for an item or a service. See In re Armour & Co., 220 USPQ 76 (TTAB 1983). Thus, applicant may be said to serve as a "ticket broker" or a "GROUP SALES BOX OFFICE". Saying that it is a conduit for a "box office" is merely saying that applicant is an extension thereof. But, that does not make "box office" any less of an apt descriptive name therefor because a "box office" is a place where tickets are sold and applicant's business is the sale of tickets and specifically "group sales" of tickets.

Applicant further argues that the Examining Attorney's evidence to prove the common descriptive meaning of the term sought to be registered is deficient in the face of its own extensive evidence that "GROUP SALES BOX OFFICE" is a mark which has achieved secondary meaning in relation to its services. On the contrary, the eight stories found in the Examining Attorney's

6

Lexis/Nexis evidence clearly show that "group sales" and "box of-fice" are common descriptive terms that are frequently employed together, although not as a composite. The following examples are found therein.

> In a good year, a well-balanced year, our group sales amount to about 10 percent of our box office income... or...

> In a further effort to control the distribution of tickets, Mr. Merrick also eliminated theater parties and group sales. In addition, he has been limiting ticket sales to six a person at the box office...

While it is true that at least three of these Lexis/Nexis stories mention applicant, the usage therein is less than helpful in establishing applicant's claim to service mark rights in the expression. Two of the stories which mention applicant use GROUP SALES BOX OFFICE in the manner of a trade name, i.e., "..., said Ronald Lee, president of Group Sales Box Office/Theater Party As-sociates, a leading organization selling group tickets." and "..., Mr. Lee, president of Group Sales Box Office, saw the play in London last October..." One uses it generically, i.e., "... and now a group sales box office (like the 21-year-old New York scheme that sells 1m tickets a year) can be hired by..."[3] These examples do not support applicant's position that the term is recognized as a service mark.

---

[3] Applicant claims that the reference to the "New York scheme" is a reference to itself. However, since the term "group sales box office" is used generically in the article it appears to presume the same characteristic is true of the "New York scheme" as well.

Concerning use in a trade name manner, we note also that the <u>Manhattan, Inc.</u> article, supra, uses it in this way. They start by referring to "... names pulled from the Group Sales Box Office/Theatre Party Associates mailing list..." and consistently refer to Group Sales Box Office/TPA or, in one case, Group Sales/ TPA. Looking at the brochures and mailing pieces submitted by applicant, we see further examples of trade name use. Each of the six lists the term "GROUP SALES BOX OFFICE" followed by the address, 234 West 44th Street, New York, New York 10036, a New York City phone number and a toll-free number. One also includes the London address and phone numbers.

In view of the foregoing, we are convinced that "GROUP SALES BOX OFFICE" is nothing more than a combination of the two common descriptive terms most applicable to applicant's services which in combination achieve no different status but remain a common descriptive compound expression. See In re Gould Corp., supra.

We have considered the statements of applicant's customers, but find them ambiguous and therefore not persuasive of a different result in light of applicant's other evidence indicating that GROUP SALES BOX OFFICE is used in most instances as a trade name and may well be so perceived, as shown in the magazine article of record.

Accordingly, the refusal to register is affirmed.

L. E. Rooney

E. W. Hanak

T. J. Quinn
Members, Trademark
Trial and Appeal Board

NOV 4 1988

9