Paper No. 10
JQ

THIS OPINION IS CITABLE
AS PRECEDENT OF THE TTAB          11/29/00

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

In re Styleclick.com Inc.
_____

Serial No. 75/459,910
_____

George W. Hoover of Blakely, Sokoloff, Taylor & Zafman for applicant.

Heather D. Thompson, Trademark Examining Attorney, Law Office 103 (Michael A. Szoke, Managing Attorney).
_____

Before Cissel, Seeherman and Quinn, Administrative Trademark Judges.

Opinion by Quinn, Administrative Trademark Judge:

An application has been filed by Styleclick.com Inc. to register the mark E FASHION for, as amended, "computer software for consumer use in shopping via a global computer network and computer software for providing fashion, beauty and shopping advice" (in International Class 9) and "electronic retailing services via a global computer network featuring apparel, fashion, accessories, personal

care items, jewelry and cosmetics" (in International Class 35).[1]

The Trademark Examining Attorney has refused registration under Section 2(e)(1) of the Trademark Act on the ground that applicant's mark, if used in connection with applicant's goods and/or services, would be merely descriptive of them.

When the refusal was made final, applicant appealed. Applicant and the Examining Attorney have filed briefs. An oral hearing was not requested.

Applicant contends that while its mark "may have a shade of descriptive meaning," (brief, p. 4) the mark is, at worst, only suggestive as applied to the goods and/or services. In this connection, applicant argues that when the mark E FASHION is considered as a whole, thought and deliberation are required to glean its significance in relation to the goods and services. Applicant specifically argues as follows:

> First of all, one must discern that "E"
> connotes "electronic." Next, one must
> ponder the question: What is
> "electronic fashion"? One would then
> have to deduce that the phrase refers

---

[1] Application Serial No. 75/459,910, filed March 31, 1998, based on applicant's assertion of a bona fide intention to use the mark in commerce. The original application was filed in the name of MonaCad, Inc. The records of the Assignment Branch of the Office reflect recordation of applicant's change of name to Styleclick.com Inc.

> to the goods and/or services identified
> by Applicant and not to fashions that
> are, in some sense, electronic or to
> electronics that are fashionable.
> (brief, p. 3)

Applicant critiques the Examining Attorney's NEXIS evidence by pointing out that there is not a single use of "e-fashion" or "e fashion", and that the articles merely indicate that it is possible to purchase fashion products on-line. In urging that the refusal be reversed, applicant relies on several third-party registrations of marks issued by the Office which, in applicant's view, are similarly constructed to applicant's mark, that is, the letter "E" followed by a word that is descriptive of the goods and/or services.[2] Lastly, applicant urges that any doubt on the issue of mere descriptiveness must be resolved in its favor.

---

[2] Attached to applicant's June 7, 1999 response are copies of several third-party registrations retrieved from the database of the Office. Applicant's appeal brief shows a list of these registrations. The list includes, however, additional third-party registrations and applications, copies of which were not timely submitted. The Examining Attorney, in her brief, made no comment whatsoever regarding the third-party registration evidence and applicant's argument relating thereto. See: *Trademark Trial and Appeal Board Manual of Procedure (TBMP)*, §1207.03.

To the extent that applicant timely submitted copies of third-party registrations with its June 7, 1999 response, these registrations are properly of record and have been considered. The additional listings in applicant's appeal brief, however, have not been considered in reaching our decision. In re Duofold Inc., 184 USPQ 638, 640 (TTAB 1974). Even if the evidence were considered, the same result would be reached in this appeal inasmuch as the evidence is merely cumulative in nature.

The Examining Attorney maintains that the mark immediately describes a significant feature of the goods and/or services, namely "that the applicant intends to provide fashion information and fashion shopping electronically via software and retail websites." (brief, p. 3) In support of her refusal, the Examining Attorney submitted dictionary definitions of the prefix "e-" and the word "fashion." The Examining Attorney also relied upon excerpts retrieved from the NEXIS database which show, according to the Examining Attorney, that online retailing featuring fashion is thriving and that, therefore, prospective purchasers would view the term E FASHION as merely descriptive when encountered in that context. Also of record are portions of applicant's Web page which indicate that applicant provides "online fashion consultations" and "fashion recommendations."

It is well settled that a term is considered to be merely descriptive of goods and/or services, within the meaning of Section 2(e)(1) of the Trademark Act, if it immediately describes an ingredient, quality, characteristic or feature thereof or if it directly conveys information regarding the nature, function, purpose or use of the goods and/or services. In re Abcor Development Corp., 588 F.2d 811, 200 USPQ 215, 217-18 (CCPA 1978). It

is not necessary that a term describe all of the properties or functions of the goods and/or services in order for it to be considered merely descriptive thereof; rather, it is sufficient if the term describes a significant attribute or feature about them.  Moreover, whether a term is merely descriptive is determined not in the abstract, but in relation to the goods and/or services for which registration is sought, the context in which it is being used on or in connection with those goods and/or services, and the possible significance that the term would have to the average purchaser of the goods and/or services because of the manner of its use.  In re Bright-Crest, Ltd., 204 USPQ 591, 593 (TTAB 1979).  Accordingly, whether consumers could guess what the product and/or service is from consideration of the mark alone is not the test.  In re American Greetings Corp., 226 USPQ 365, 366 (TTAB 1985).

The dictionary evidence shows the prefix "e-" defined as follows:  "(Electronic-)  The 'e-dash' prefix may be attached to anything that has moved from paper to its electronic alternative, such as e-mail, e-cash, etc."  *The Computer Glossary* (8th ed. 1998).  An online resource shows, in pertinent part, the letter "e" to be an abbreviation for the term "electronic."  *The Acronym Finder* (1999).  The term "fashion" is defined as "the prevailing style (as in

dress) during a particular time; a garment in such a style." *WWWebster Dictionary* (1998).[3]

Also of record are several excerpts retrieved from the NEXIS database which show, not surprisingly, that one can access the Internet to buy clothing and/or to get information or advice regarding fashion. While there are uses of the term "online fashion," the record does not include any third-party uses of the term "e-fashion."

In the present case, it is our view that, when used in connection with applicant's "computer software for consumer use in shopping via a global computer network and computer software for providing fashion, beauty and shopping advice" and "electronic retailing services via a global computer network featuring apparel, fashion, accessories, personal care items, jewelry and cosmetics," the term E FASHION immediately describes, without conjecture or speculation, a significant characteristic or feature of the goods and/or services, namely, that they involve retrieving fashion information and/or shopping for fashions electronically via software and retail websites on the Internet. To consumers for applicant's goods and/or services, there is nothing in

---

[3] This definition, retrieved from an on-line dictionary, was properly made of record during the prosecution of the application. Cf.: In re Total Quality Group Inc., 51 USPQ2d 1474, 1476 (TTAB 1999).

the term E FASHION which, in the context of such goods and/or services, would be ambiguous, incongruous or susceptible to any other plausible meaning.

We have reviewed the numerous third-party registrations of record which issued on the Principal Register. The marks which are most analogous to applicant's include the following: E-STAMP for "postage and mailing system computer software"; E-TRAVEL for "travel information services, namely providing travel information by means of computer data base"; E-MORTGAGE for "computerized loan approval services, namely, on-line financing and mortgage banking services wherein a borrower submits an application for a mortgage loan via a computer on-line service or a global computer network"; E-FARES for "providing computerized travel information, namely, airline information retrieval services"; and E-INSURE for "providing insurance information concerning insurance products and services."

These registrations offer little help in making a determination of the merits in this appeal. While uniform treatment under the Trademark Act is an administrative goal, our task in this appeal is to determine, based on the record before us, whether *applicant's mark* is merely descriptive. As often noted by the Board, each case must

7

be decided on its own merits.  We are not privy to the records in the files of the cited registrations and, moreover, the determination of registrability of particular marks by the Trademark Examining Groups cannot control the result in another case involving a different mark for different goods and/or services.

Having said the above, it certainly does appear that the Office has in the past not always taken the same position with respect to marks of the nature of applicant's as the Examining Attorney urges in the present case. Office practice has resulted in inconsistent treatment of "e-" prefix marks which are similar in nature to applicant's.  In trying to understand this situation, we would make the point that, with each passing day, the Internet becomes more pervasive in American daily life. Many Internet words, such as "e-mail" and "e-commerce," have made their way into the general language.  See: Continental Airlines Inc. v. United Air Lines Inc., 53 USPQ2d 1385 (TTAB 1999)[E-TICKET is generic for computerized reservation and ticketing of transportation services]; and In re Putnam Publishing Co., 39 USPQ2d 2021 (TTAB 1996)[FOOD & BEVERAGE ONLINE is merely descriptive when used in connection with a news and information service updated daily for the food processing industry, contained

in a database].  We note that most of the third-party registrations relied upon by applicant were issued in 1997–1998, with a few issuing in 1999.[4]  While, by most standards, one to three years in the past would be viewed as "recent," a year or two is an eternity in "Internet time," given the rapid advancement of the Internet into every facet of daily life (most especially, e-mail).  Only "recently," the Internet meaning of the "e-" prefix may have been known only by those few who were then accessing the Internet.  We have no doubt that in the year 2000, the meaning of the "e-" prefix is commonly recognized and understood by virtually everyone as a designation for the Internet.[5]  See:  In re Cryomedical Sciences Inc., 32 USPQ2d 1377 (TTAB 1994)[SMARTPROBE is merely descriptive for cryosurgical probes having electronic or microprocessor components due to meaning of "smart" as a computer term].

---

[4] We also note that some of the underlying applications were filed two years or more before the registration date.  The lag time between the initial examination of the application and the issuance of the registration may have contributed to this situation.

[5] In this connection, we analogize to another situation influenced by the proliferation of computers.  At one time, the Office accepted "computer programs" as a sufficient identification of goods in International Class 9.  Over time, however, this identification was rendered indefinite "[d]ue to the proliferation of computer programs over recent years and the degree of specialization that these programs have." *Trademark Manual of Examining Procedure*, §804.03(b).  Now, any identification of goods fo computer programs or comparable goods "must be sufficiently specific to permit determinations with respect to likelihood of confusion."

Cf. In re Packaging Specialists, Inc., 221 USPQ 917 (TTAB 1984)[the entity designation "INC." in a trademark has no source indication or distinguishing capacity].

In sum, "e-," when used as a prefix in the manner of applicant's mark, has the generally recognized meaning of "electronic" in terms of computers and the Internet. When this non-source-identifying prefix is coupled with the descriptive word "fashion," the mark E FASHION, as a whole, is merely descriptive for applicant's goods and/or services. That applicant may be the first or only entity using E FASHION is not dispositive. See: In re Central Sprinkler Co., 49 USPQ2d 1194 (TTAB 1998).

The intent of Section 2(e)(1) is to protect the competitive needs of others, that is, "descriptive words must be left free for public use." In re Colonial Stores, Inc., 394 F.2d 549, 157 USPQ 382, 383 (CCPA 1968). As the Internet continues to grow, merely descriptive "e-" prefix terms for Internet-related goods and/or services must be kept available for competitive use by others.

In view of the above, we conclude that E FASHION, if used in connection with "computer software for consumer use in shopping via a global computer network and computer software for providing fashion, beauty and shopping advice" and "electronic retailing services via a global computer

10

network featuring apparel, fashion, accessories, personal care items, jewelry and cosmetics," would be merely descriptive under Section 2(e)(1) of the Trademark Act.

Decision:  The refusal to register is affirmed.


R. F. Cissel



E. J. Seeherman



T. J. Quinn
Administrative Trademark
Judges, Trademark Trial
and Appeal Board