CV
Paper No. 34

FOR PUBLICATION IN FULL

U. S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

––––––

Trademark Trial and Appeal Board

––––––

Concurrent Technologies, Inc.
v.
Concurrent Technologies Corporation

––––––

Cancellation No. 16,223

––––––

William H. Drummond for Concurrent Technologies, Inc.

Cort Flint for Concurrent Technologies Corporation.

––––––

Before Sams, Rooney and Quinn, Members.

Opinion by Quinn, Member:


Concurrent Technologies, Inc. has petitioned to cancel a registration owned by Concurrent Technologies Corporation for the mark "CONCURRENT TECHNOLOGIES CORPORATION" for "electronic hardware, namely printed electronic circuit boards."[1] As grounds for its petition, petitioner asserts that it manufactures and sells printed electronic circuitboards for computers which utilize "concurrent technology;" that due to petitioner's use of "Concurrent Technologies, Inc." as its company trade name,

––––––

[1] Reg. No. 1,277,859, issued May 15, 1984. The words "Technologies Corporation" are disclaimed apart from the mark.

respondent has threatened to sue petitioner for infringement; and that "the word 'concurrent' is or has become the common descriptive name of technology embodied in computer hardware of the type sold by Petitioner and Respondent and such common description is the primary significance of 'concurrent technology' to the relevant public in connection with such goods."

Respondent, in its answer, denied the salient allegations of the petition except that respondent admits notifying petitioner that its use of "Concurrent Technologies" was an infringement of respondent's mark.

The record consists of the pleadings, the file of the registration sought to be cancelled, two testimony depositions and related exhibits offered by petitioner and two testimony depositions and related exhibits offered by respondent, respondent's responses to petitioner's interrogatories and petitioner's responses to respondent's interrogatories.

Before proceeding to the merits of this case, we must initially address the controversy raised by respondent as to the nature of the specific issue now before the Board for final decision. Petitioner, in its brief on the case, states that the issue herein is whether respondent's mark is merely descriptive as applied to its goods. Respondent, in its brief on the case, disagrees and asserts that the issue

2

is whether the designation "Concurrent Technology" is the common descriptive name of the goods, that is, whether the mark is generic. Respondent argues that the issue of mere descriptiveness is not properly before the Board and that petitioner, after realizing the insufficiency of its case on genericness, has attempted to frame a different ground for cancellation.

Section 2(e)(1) of the Trademark Act prohibits registration of a designation if it consists of a mark that, "when applied to the goods of the applicant, is merely descriptive of them." A descriptive term, however, that has become distinctive of an applicant's goods may be registered under Section 2(f) of the Trademark Act. On the other hand, a generic term is the common descriptive name of a class of goods (or services) and, while it remains such common descriptive name, it can never be registered as a trademark because such a term is "merely descriptive" within the meaning of Section 2(e)(1) and is incapable of acquiring de jure distinctiveness under Section 2(f). Whether a designation is merely descriptive or generic is a matter of degree; thus, the proof of one goes to the proof of the other. The generic name of a thing is the ultimate in descriptiveness. See H. Marvin Ginn Corp. v. International Association of Fire Chiefs, Inc., 782 F.2d 988, 228 USPQ 528, 530 (Fed. Cir. 1986); J. Thomas McCarthy, <u>Trademarks and Unfair Competition</u>, Section 12:18 (2d ed. 1984).

3

While petitioner's pleading of the ground for cancellation sounds like an allegation of genericness (i.e, the ultimate in descriptiveness), we believe that the pleading put respondent on adequate notice that the ground encompassed mere descriptiveness as an issue in this proceeding. If we had any doubt as to respondent's notice or awareness that mere descriptiveness was tried by the parties, a review of respondent's discovery requests and questions put to witnesses dispels any such doubt. In respondent's direct examination of its own witness, Robert Ehlers, respondent asked question 34: "Do you know of anybody in your field that uses the word concurrent to describe or refer to their hardware product?" In respondent's cross-examination of Robert McAuley, respondent asked: "Do any of your competitors use it [the term "concurrent"] in the descriptive sense?" In addition, interrogatory no. 13 propounded by respondent reads: "Will Petitioner contend in the cancellation proceeding that the terms (1) 'Concurrent' and (2) 'Concurrent Technologies' are descriptive or generic as applied to the goods of Respondent?"; petitioner answered "Yes".

In view of the above, respondent may not be heard to complain that mere descriptiveness is not an issue raised by the pleadings and tried by the parties and that genericness is the sole issue before the Board.

4

Petitioner has shown through testimony and evidence that it is engaged in the manufacture and sale of circuit boards for computers. Petitioner has fourteen different circuit boards for sale. Robert McAuley, the general sales manager of petitioner, testified that the term "concurrent" has a meaning in the trade, that is, "the occurring of two or more tasks or events in a simultaneous manner." Petitioner's boards fit into a computer system and, for example, one board "could be gathering data while another board in the system processes the data or presents output to a printer." (McAuley deposition, pg. 9-10). Mr. McAuley stated that petitioner's only use of the term "concurrent" is as part of its trade name. He further testified that petitioner does not use the term "concurrent" to describe its products in its literature. He also stated that "we don't use it [the term "concurrent"] in the discussion of what we call functions and benefits." In response to interrogatory no. 29, petitioner answered: "The only use of the word 'concurrent' which petitioner makes is to identify its corporate name. It does not use the word 'concurrent' in the generic or common descriptive sense or in any other sense in connection with its products." Moreover, Mr. McAuley testified that he is unaware of any descriptive use of the term 'concurrent' by competitors. In response to a question as to whether or not petitioner's goods used

Cancellation No. 16,223

"concurrent technology", Mr. McAuley answered in the affirmative.

Petitioner also has introduced the testimony of Daniel Fink, a consultant in the computer field.[2]  Mr. Fink testified that the term "concurrent" has a generally recognized meaning in the computer industry, that is, it "describes a whole set of situations where basically one thing gets started and before it's completed another thing gets started and takes place at the same time or concurrently" (Fink deposition, pg. 13).  Mr. Fink also asserted that the term "concurrent" has become "passe" and that more precise terminology, such as "multitasking" and "multiprocessing," is being used today.  Mr. Fink testified that "there's a whole class of vendors making what are termed as concurrent processor or parallel processor systems."  It is Mr. Fink's opinion that respondent's goods "involve very, very traditional concurrent operation" (pg. 28).

Petitioner, in connection with the McAuley testimony, introduced an article published by a trade group, American

---

[2] Respondent has objected to Mr. Fink's testimony as "not credible and of dubious value."  Respondent contends that the testimony is tainted with bias in favor of petitioner due to a financial conflict of interest and the fact that Mr. Fink is a friend of Mr. McAuley and that the two men discussed the case prior to Mr. Fink's testimony.  Respondent also contends that Mr. Fink's educational and work backgrounds do not qualify him as an expert.  Finally, respondent objected to several questions put to Mr. Fink as "leading."
The objections are overruled and we have accorded appropriate probative weight to Mr. Fink's testimony.

6

Computer Machines, in 1983 entitled "Research on Synthesis of Concurrent Computing Systems" (Ex. 4). Another article, appearing in Computer Design dated June 1, 1987, refers to "concurrent operations" (Ex. 5). Exhibits 6-10 of the Fink testimony comprise excerpts from textbook and magazine articles to show the use of the term "concurrent" (or variations thereof such as "concurrency" or "concurrently") in the computer trade. The references introduced in connection with the Fink testimony show such use as "multiple concurrent input and output operations" (Ex. 6); "concurrent functions" (Ex. 7); "concurrent operation" (Ex. 8); "the multiple processors can manipulate all these data concurrently" (Ex. 9); and "a concurrent sustained transfer rate" (Ex. 10).

Respondent has introduced the testimony of its founder, Robert H. Ehlers. Mr. Ehlers testified that the term "concurrent" has no meaning in the electronics field and that it only has meaning when used in conjunction with another word, such as "concurrent processing" (Ehlers deposition, pg. 5). Mr. Ehlers asserts that he is "unaware of anyone in the computer field that uses the term 'concurrent' to describe their hardware."

Respondent also took the testimony of Kurt S. Priester, president of a third-party corporation which manufactures computer hardware and software. Mr. Priester, who alleges to be an expert in computer hardware and

7

software, has testified that the only meaning of "concurrent technologies" is the name of respondent's corporation (Priester deposition, pg. 5). Mr. Priester testified that other than respondent, he was unaware of any companies in the computer field that used "concurrent" in their name. Mr. Priester, however, also recalled reading a magazine advertisement for "someone supplying computer boards in California named Concurrent Technologies, Inc.," but was unable to recall any of the particulars surrounding this use. When asked the meaning of "concurrent", Mr. Priester replied as follows:

34.

A. Concurrent is used [sic] multiple events occurring simultaneously. In the computer jargon, that is the only association that I've ever seen in it, multiple events occurring at the same time.

35. What field do you find this most commonly used in?

A. Primarily relating to the way a system is programmed to get multiple functions appearing at the same time, primarily -- you just can't take the word concurrent and assign anything specific to it other than generically.

36. As distinguished between computer hardware and computer software, is this term used primarily in one of these two fields?

A. I don't relate it at all toward hardware. There are other terminologies that very definitely define the hardware approach. If we saw it at all, it would be in a

8

> software context or a very general
> context. The hardware contact [sic], you
> get into multi-processing, multi-tasking,
> which means something. Concurrent
> processing of the hardware concept, you
> don't normally run across that.

Respondent, in connection with the Ehlers testimony, submitted a definition of "concurrent processing" that refers the reader to "multi-programming." This definition in The Illustrated Dictionary of Electronics (1980) at page 161 reads "1. Computer operation in which several programs in memory share peripherals and processor time. 2. Programming a computer so that several logic or arithmetic operations can be carried out at the same time" (Ex. 2). Respondent also submitted an excerpt from The Encyclopedia of Computer Science and Engineering (1983) at page 396 wherein "concurrent programming" is listed as "the development of programs that specify the parallel execution of several tasks" (Ex. 3).

A mark is considered to be merely descriptive within the meaning of Section 2(e)(1) if it describes an ingredient, quality, characteristic, function, feature, purpose, use, etc. of the goods to which it is applied. See: In re Abcor Development Corp., 616 F.2d 525, 200 USPQ 215 (CCPA 1878); and In re Bright-Crest, Ltd., 204 USPQ 591 (TTAB 1979). The question whether or not a mark is merely descriptive must be determined not in the abstract but rather in relation to the goods for which registration is sought, the context in which

9

the mark is used in connection with those goods, and the possible significance which the mark would have, because of the context in which it is used, to the average purchaser of the goods in the marketplace. See: In·re Abcor Development Corp., supra. In determining the issue before us, we must consider the descriptiveness of the mark "CONCURRENT TECHNOLOGIES CORPORATION" by looking at the mark as a whole. Common words in which no one may acquire a trademark because they are descriptive or generic may, when used in a composite mark, become a valid trademark. McCarthy, Trademarks and Unfair Competition, supra at Section 11:10.

On the record before us, we conclude that the mark "CONCURRENT TECHNOLOGIES CORPORATION" as a whole is not merely descriptive when applied to respondent's electronic circuit boards.

We acknowledge, even as respondent's own expert witness has acknowledged, that the term "concurrent" has a meaning in the computer field. It does not follow, however, that the mark in its entirety, that is, "CONCURRENT TECHNOLOGIES CORPORATION", is merely descriptive. The bulk of petitioner's testimony and exhibit evidence goes to the descriptiveness of the term "concurrent," per se. The documentary evidence supporting petitioner's position consists of excerpts from textbooks and magazines showing use of the term "concurrent"; respondent has submitted dictionary

10

definitions for the term "concurrent." While this term standing alone has a meaning in the computer field, the record is completely devoid of evidence of any descriptive use of or any meaning for "concurrent technologies" in the trade. While petitioner asserts that "the term 'concurrent technologies' in the relevant trade means applied concurrent systems" in response to interrogatory no. 12, this contention is not supported by the record. No dictionary listings for "concurrent technology" or "concurrent technologies" have been submitted. Thus, on the record before us, we can only conclude that "concurrent technologies" has no established meaning in the context of either computer hardware or software. It simply cannot be said that "CONCURRENT TECHNOLOGIES CORPORATION" tells a relevant purchaser anything about the electronic circuit boards of respondent. We believe that, at most, the mark suggests a company that manufactures goods for use in connection with concurrent processing. [3]

---

[3] In reaching our decision, we take note of the Federal Circuit's decision in In re Hutchinson Technology, 852 F.2d 552, 7 USPQ2d 1490 (Fed. Cir. 1988). In that case, which involved a surname refusal, the Court found that the fact that the term "technology" was used in connection with computer products did not mean that the term was descriptive of them. The Court noted that many other goods might be included within the broad term "technology," but that did not make the term descriptive of all of those goods. The Court concluded that the term "technology" did not convey an immediate idea of the "ingredients, qualities or characteristics of the goods" (electronic and computer components) and, thus, the term "technology" was not merely descriptive of the goods.

11

The absence from this record of evidence of any descriptive use of the term "concurrent" or "concurrent technologies" by respondent or others in the field, including petitioner, reinforces our view that respondent's mark is not merely descriptive.

The intent of Section 2(e)(1) is to protect the competitive needs of others, that is, "descriptive words must be left free for public use." In re Colonial Stores, Inc., 394 F.2d 549, 157 USPQ 382, 383 (CCPA 1968). In the instant case, we believe that competitors are not unduly deprived by registration of the combination "CONCURRENT TECHNOLOGIES CORPORATION." There is no indication that anyone in the industry would ever need to use "concurrent technologies" to describe his goods of similar nature. We have no concern that the registered mark will inhibit others from ordinary descriptive use of the term "concurrent," or of the term "technologies," either alone or in other combinations, to describe or suggest goods of the kind involved herein.

In view of the foregoing, we conclude that the designation "CONCURRENT TECHNOLOGIES CORPORATION," when considered in its entirety as applied to respondent's goods, is not merely descriptive within the meaning of Section 2(e)(1). It follows, of course, that the petition must fail on the ground of genericness as well.

12

Decision:  The petition is dismissed.

*J. D. Sams*

*L. E. Rooney*

*T. J. Quinn*
Members, Trademark
Trial and Appeal Board

APR 28 1989

13