2/12/01

THIS DISPOSITION
IS CITABLE AS PRECEDENT
OF THE T.T.A.B.

Paper No. 11
JQ

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Styleclick.com Inc.
_____

Serial No. 75/459,912
_____

George W. Hoover of Blakely, Sokoloff, Taylor & Zafman for applicant.

Heather D. Thompson, Trademark Examining Attorney, Law Office 103 (Michael A. Szoke, Managing Attorney).
_____

Before Cissel, Seeherman and Quinn, Administrative Trademark Judges.

Opinion by Quinn, Administrative Trademark Judge:

An application has been filed by Styleclick.com Inc. to register the mark VIRTUAL FASHION for, as amended, "computer software for consumer use in shopping via a global computer network and computer software for providing fashion, beauty and shopping advice" (in International Class 9) and "electronic retailing services via a global computer network featuring apparel, fashion, accessories,

personal care items, jewelry and cosmetics" (in

International Class 35).[1]

The Trademark Examining Attorney has refused

registration under Section 2(e)(1) of the Trademark Act on

the ground that applicant's mark, if used in connection

with applicant's goods and/or services, would be merely

descriptive of them.

When the refusal was made final, applicant appealed.

Applicant and the Examining Attorney have filed briefs.  An

oral hearing was not requested.

Applicant contends that its mark "may have a shade of

descriptive meaning," but that "this meaning is only enough

to trigger the suggestive process and does not provide an

ordinary purchaser with a ready understanding of what the

goods and services are."  (brief, p. 4)  Applicant goes on

to assert that "[g]ranted, virtual things are often created

by computerized or electronic means, but this does not make

the word 'virtual' synonymous with 'computerized' or

'electronic.'"  (brief, p. 4)  With respect to the NEXIS

evidence submitted by the Examining Attorney, applicant

---

[1] Application Serial No. 75/459,912, filed March 31, 1998, based
on applicant's assertion of a bona fide intention to use the mark
in commerce.  The original application was filed in the name of
MonaCad, Inc.  The records of the Assignment Branch of the Office
reflect recordation of applicant's change of name to
Styleclick.com Inc.

responds as follows:

> The stories that were retrieved do indeed show that "virtual store" is a relatively commonly-used term to describe online shopping facilities, including those that deal in fashion products. This conforms to the accepted meaning of the word "virtual" since a virtual store site provides the consumer with the features of a physical "brick and mortar" store without actually being a store. This, however, has no relevance to the issue of whether or not applicant's mark is descriptive. To the extent that Applicant's goods and services relate to "fashion," the fashions actually exist in reality. Just because fashion products may be offered for sale in a "virtual store," that does not mean that the products themselves are aptly described as "virtual." For example, Amazon.com may be regarded as a virtual bookstore, but it does not sell "virtual books," nor would "virtual book" be properly considered as merely descriptive of the goods or services provided by Amazon.com. (brief, p. 4)

In arguing that the refusal should be reversed, applicant relies on several third-party registrations of marks issued by the Office which, in applicant's view, are similarly constructed to applicant's mark, that is, the term "virtual" followed by a word that is descriptive of the goods and/or services.[2] At most, applicant contends, it

---

[2] Attached to applicant's June 7, 1999 response are copies of several third-party registrations retrieved from the database of the Office. Applicant's appeal brief shows a list of some of these registrations. The list includes, however, additional

should only be required to disclaim the word "fashion."  In
addition to the third-party registrations, applicant
submitted a copy of its Web page.

The Examining Attorney submits that the term "virtual"
has become synonymous with computer-based and/or Internet-
delivered goods and services.  According to the Examining
Attorney, the mark sought to be registered conveys the fact
that applicant intends to provide fashion information and
fashion shopping via software and retail websites, accessed
primarily by computers.  The Examining Attorney contends
that the term "virtual" is analogous to the prefix letter
"E" in modern usage, referring to electronic or computer-
based goods and/or services.  In support of the refusal,
the Examining Attorney introduced excerpts retrieved from
the NEXIS database showing uses of the term "virtual
fashion show."  Also of record are dictionary listings for
the terms "virtual" and "fashion."

---

third-party applications, copies of which were not previously
submitted.  The Examining Attorney, in her brief, made no mention
whatsoever regarding the third-party evidence and applicant's
argument relating thereto.  See: *Trademark Trial and Appeal
Board Manual of Procedure* (*TBMP*), §1207.03.
  Although the registrations are properly of record and have been
considered, the additional third-party applications listed in
applicant's appeal brief have not been considered in reaching our
decision.  In re Duofold Inc., 184 USPQ 638, 640 (TTAB 1974).
Even if the evidence were considered, the same result would be
reached in this appeal inasmuch as the evidence, at best, is
merely cumulative in nature.

It is well settled that a term is considered to be merely descriptive of goods and/or services, within the meaning of Section 2(e)(1) of the Trademark Act, if it immediately describes an ingredient, quality, characteristic or feature thereof or if it directly conveys information regarding the nature, function, purpose or use of the goods and/or services. In re Abcor Development Corp., 588 F.2d 811, 200 USPQ 215, 217-18 (CCPA 1978). It is not necessary that a term describe all of the properties or functions of the goods and/or services in order for it to be considered merely descriptive thereof; rather, it is sufficient if the term describes a significant attribute or feature about them. Moreover, whether a term is merely descriptive is determined not in the abstract, but in relation to the goods and/or services for which registration is sought, the context in which it is being used on or in connection with those goods and/or services, and the possible significance that the term would have to the average purchaser of the goods and/or services because of the manner of its use. In re Bright-Crest, Ltd., 204 USPQ 591, 593 (TTAB 1979). Accordingly, whether consumers could guess what the product and/or service is from consideration of the mark alone is not the test. In re American Greetings Corp., 226 USPQ 365, 366 (TTAB 1985).

The dictionary evidence shows the term "virtual" defined as follows: "Not real. The term *virtual* is popular among computer scientists and is used in a wide variety of situations. In general, it distinguishes something that is merely conceptual from something that has physical reality." *PC Webopaedia* (1998). We take judicial notice of these other listings for the term: "Not physical. Exists in the software only or in the imagination of the machine." *net.speak—the internet dictionary* (1994); "Used generally to describe something without a physical presence or is not what it appears to be. Virtual reality, for example, is made up of computer-generated images and sounds rather than actual objects." *The Computing Dictionary* (1996); and "conceptual rather than actual, but possessing the essential characteristics of a real function." *The Illustrated Dictionary of Microcomputers* (3rd ed. 1990). The term "fashion" is defined as "the prevailing style or custom, as in dress or behavior; something, such as a garment, that is in the current mode." *The American Heritage Dictionary of the English Language* (3rd ed. 1992).

The Examining Attorney also introduced excerpts retrieved from the NEXIS database which show that one can access the Internet to buy clothing and/or to get

information or advice regarding fashion.  In this connection, the articles also document the emergence of "virtual stores" on Web sites which allow Internet surfers to purchase on-line just about every product (including clothing) or service imaginable.  In the words of one article, "[n]ow, every household that has an Internet connection is a fashion store." *The New York Times* (February 8, 1999).  The record also includes the following examples:  "...the growing number of 'virtual fashion malls' and apparel manufacturer websites..." *Apparel Industry Magazine* (August 1998); and several uses of "virtual fashion show," such as "[v]irtual fashion shows featuring the very latest styles for men and women can be found at dozens of sites" (*CNBC News transcript* (September 20, 1997)) and "a new video-imaging system, which allows the viewer to watch a virtual fashion show" (*WWD* (February 18, 1997)).  Other uses include the following:

> Next, using footage of the original
> Mugler dress as a reference, the exact
> cut of the garment and fabric
> characteristics were re-created in 3D,
> then fitted to the virtual model.  That
> same attention to detail was also
> applied to the virtual fashion show
> set...
> (*Computer Graphics World*, July 1998)
>
> From computer-assisted design on
> textiles to using computers for sales
> to "staging" virtual fashion shows in

> the way Mr. Lang has done, fashion has
> been slow on the uptake.
> (*The New York Times*, April 1, 1998)

Another article refers to applicant's software as follows: "That includes the $70 million renovation of its showroom at Marina alla Scala in Milan, with high-tech visual displays, retail space and 'virtual fashion' computers throughout its showroom." (*WWD*, June 12, 1997).

We find that the term VIRTUAL FASHION, when used in connection with applicant's goods and services, immediately describes, without conjecture or speculation, a significant characteristic or feature of the goods and/or services, namely, that they involve retrieving, via computers and/or the Internet, fashion information and/or shopping for fashions in a virtual sense, that is, with the enhancements offered by virtual reality. The NEXIS evidence indicates that people have come to recognize that the term "virtual," when used in connection with computers and related goods and services, means that someone at a computer is able to encounter certain things in a non-physical or "virtual" manner. In this sense, the term VIRTUAL FASHION describes applicant's identified goods and/or services as allowing individuals using computers to encounter, in a virtual manner, things relating to fashion, without physically touching any fashion items. Consumers of applicant's

8

particular goods and/or services would immediately understand the term VIRTUAL FASHION as conveying this information; there is nothing in the term VIRTUAL FASHION which, in the context of applicant's particular goods and/or services, would be ambiguous, incongruous or susceptible to any other plausible meaning.

We have reviewed the numerous third-party registrations of record which issued on the Principal Register. The marks include the following: VIRTUAL CAR ("CAR" disclaimed) for "rental and leasing services, and reservation services for the rental and leasing of vehicles"; VIRTUAL ROADSHOW ("ROADSHOW" disclaimed) for "dissemination of advertising for others via an on-line electronic communications network, and advertising services, namely, providing roadshows for public stock and bond offerings on global computer networks"; VIRTUAL EMPORIUM ("EMPORIUM" disclaimed) for "on-line ordering services featuring general merchandise"; VIRTUAL FURNITURE WAREHOUSE ("FURNITURE WAREHOUSE" disclaimed) for "retail store and video furniture catalog services whereby home furnishings available for purchase are displayed by computer for purchase by the consumer"; VIRTUAL WINE CELLAR for "dissemination to particular customers, by electronic communications networks, information concerning wine stored

9

by applicant for the particular customer"; VIRTUAL CONCIERGE for "electronic audio-visual display kiosk which provides access to information on entertainment, sports, and athletic event information, ticketing and seating availability via keypads and/or touch screens"; and VIRTUAL SHOPPING CENTER ("SHOPPING CENTER" disclaimed) for "audio and video teleconferencing services, namely, providing interactive shopping services conducted by means of an interactive video teleconferencing apparatus, whereby the consumer and a representative of a goods or services provider at a site remote from the consumer are placed into contact through the video teleconferencing apparatus."

These registrations offer little help in making a determination of the merits in this appeal. While uniform treatment under the Trademark Act is an administrative goal, our task in this appeal is to determine, based on the record before us, whether *applicant's mark* is merely descriptive. As often noted by the Board, each case must be decided on its own merits. We are not privy to the records in the files of the cited registrations and, moreover, the determination of registrability of particular marks by the Trademark Examining Groups cannot control the result in another case involving a different mark for different goods and/or services. See: In re Nett Designs,

10

Inc., ___USPQ2d___, Appeal No. 00-1075, (Fed. Cir. January 9, 2001)["Even if some prior registrations had some characteristics similar to [appliant's] application, the PTO's allowance of such prior registrations does not bind the Board or this court."].

Notwithstanding the above, it certainly does appear that the Office has in the past not always taken the same position with respect to marks of the nature of applicant's as the Examining Attorney urges in the present case. Office practice has resulted in inconsistent treatment of "VIRTUAL" type marks which are similar in nature to applicant's. In trying to understand the situation, we would make the point that, with each passing day, computers and the Internet becomes more pervasive in American daily life. Many words, such as "virtual reality," "virtual store" and "e-mail" have made their way into the general language. See: In re Styleclick.com Inc., ___USPQ2d___, Ser. No. 75/459,910, (TTAB November 29, 2000)[E FASHION is merely descriptive for the same goods and services as those identified in the present application]; Continental Airlines Inc. v. United Air Lines Inc., 53 USPQ2d 1385 (TTAB 1999)[E-TICKET is generic for computerized reservation and ticketing of transportation services]; and In re Putnam Publishing Co., 39 USPQ2d 2021 (TTAB

1996)[FOOD & BEVERAGE ONLINE is merely descriptive when used in connection with a news and information service updated daily for the food processing industry, contained in a database]. We note that most of the third-party registrations relied upon by applicant were issued in 1997 or 1998, with one issuing in 1999.[3] While, by most standards, one to three years in the past would be viewed as "recent," a year or two is an eternity in computer, or "Internet," time, given the rapid advancement of computers and the Internet into every facet of daily life. Only "recently," the computer or Internet meaning of "virtual" may have been known only by those few who were then using computers or accessing the Internet. We have no doubt that in the year 2001, the meaning of the term "virtual" is commonly recognized and understood by most people as meaning something that is merely conceptual rather than something that has physical reality, especially in connection with things encountered via computers and the Internet.[4] See: In re Cryomedical Sciences Inc., 32 USPQ2d

---

[3] We also note that some of the underlying applications were filed two years or more before the registration date. The lag time between the initial examination of the application and the issuance of the registration may have contributed to this situation.
[4] In this connection, we analogize to another situation influenced by the proliferation of computers. At one time, the Office accepted "computer programs" as a sufficient identification of goods in International Class 9. Over time,

1377 (TTAB 1994)[SMARTPROBE is merely descriptive for cryosurgical probes having electronic or microprocessor components due to meaning of "smart" as a computer term].

In sum, "virtual," when used as it is in applicant's mark, has a generally recognized meaning in terms of computers and the Internet. When this non-source-identifying prefix is coupled with the descriptive word "fashion," the mark VIRTUAL FASHION, as a whole, is merely descriptive for applicant's goods and/or services. That applicant may be the first or only entity using VIRTUAL FASHION is not dispositive. See: In re Central Sprinkler Co., 49 USPQ2d 1194 (TTAB 1998).

The intent of Section 2(e)(1) is to protect the competitive needs of others, that is, "descriptive words must be left free for public use." In re Colonial Stores, Inc., 394 F.2d 549, 157 USPQ 382, 383 (CCPA 1968). As the Internet continues to grow, merely descriptive "virtual" terms for Internet-related goods and/or services must be kept available for competitive use by others.

---

however, this identification was rendered indefinite "[d]ue to the proliferation of computer programs over recent years and the degree of specialization that these programs have." *Trademark Manual of Examining Procedure*, §804.03(b). Now, any identification of goods for computer programs or comparable goods "must be sufficiently specific to permit determinations with respect to likelihood of confusion."

In view of the above, we conclude that VIRTUAL FASHION, if used in connection with "computer software for consumer use in shopping via a global computer network and computer software for providing fashion, beauty and shopping advice" and "electronic retailing services via a global computer network featuring apparel, fashion, accessories, personal care items, jewelry and cosmetics," would be merely descriptive under Section 2(e)(1) of the Trademark Act.

Decision:  The refusal to register is affirmed.